## Brink's Express Company, Appellant, v. Public Service Commission et al.

Argued November 21, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Berne H. Evans,* of *Hause, Evans, Storey & Lick,* for appellant.

*Samuel Graff Miller,* with him *Paul H. Rhoads, E. Everett Mather, Jr.,* and *John Fox Weiss,* for Public Service Commission, appellee.

*Robert W. Archbald, Jr.,* with him *Ralph C. Busser, Jr.,* and *Albert L. Moise,* for Protective Motor Service Company, intervening appellee.

Opinion by Stadtfeld, J., April 15, 1935:

The Protective Motor Service Company complained to The Public Service Commission that the appellant here, Brink's Express Company (now known as Brink's, Incorporated), was operating armored motor trucks as a common carrier of money, securities and other valuables within the vicinity of Philadelphia,

without having secured a certificate of public convenience authorizing it to engage in this business. The complaint alleged that Brink's operations were in direct competition with those of the complainant, were injurious to it and unlawful. Brink's answered the complaint with an averment that it was not engaged in common carriage, that its services were rendered to its customers under individual contracts, the terms of which depended upon the characteristics of each service; that by its charter it was prohibited from engaging in common carriage and that it was not under the jurisdiction of the Public Service Commission.

At the hearing, it was admitted that the complainant and appellant here were engaged in practically the same business; that the complainant had secured a certificate of public convenience from the Commission, authorizing it to engage in that business, and that the appellant here had no such certificate.

There was no dispute as to the facts which, briefly, were that both companies were engaged in operating armored motor trucks for the transfer of money and other valuables from place to place, in making up and guarding payrolls, and in similar services.

After hearing, the Commission made a report and order in which it held that the appellant was engaged in common carriage and that it would be required to secure a certificate of public convenience from the Commission authorizing it to continue in that business.

From this decision of the Commission this appeal was taken.

The position of appellant is that the work which it does for its customers is not common carriage; that it does not hold itself out as a common carrier; that it is not paid for carriage, either common or private; that its business is not susceptible to reasonable regulation.

The respondent is a corporation of the State of Illinois and operates in 24 states outside of the State of Illinois. In January, 1922, the company registered in Pennsylvania and began doing business in Philadelphia. It has since extended this business to Pittsburgh, Erie, Johnstown and Altoona. It operates at the present time from 24 to 27 trucks in Philadelphia, a large number in Pittsburgh, 2 in Erie, 1 in Johnstown and 1 in Altoona. In the Philadelphia district the company has approximately 700 customers.

In 1923, it amended its charter so that the purpose of the corporation read: ''To perform all of the following services for compensation for other persons, firms or corporations with whom or which this corporation may specially contract, exclusively by separate individual contracts with each such person, firm or corporation, and not in any way as a common carrier, nor as rendering or offering to render service to the public, to wit: to receive checks from such other persons, firms or corporations, to cash the same at the banks on which they are drawn, to make up payrolls for such other persons, firms or corporations out of said moneys so received, or other moneys, to carry such payrolls, or other moneys or securities, and to guard and protect the same, for such persons, firms or corporations, and to attend to the paying of the employees of such other persons, firms or corporations, and to handle the clearings for banks and sell tickets and handle the proceeds for conventions, exhibitions and performances; all said business to be carried on in Chicago, Illinois, or elsewhere in the United States of America or any foreign country in which this corporation is properly admitted to transact its business.

''Also to manufacture, repair, buy, sell, lease and deal in any and every way, safes, chests, cash protectors and similar equipment, and warrant and

guarantee such equipment and make contracts with respect to the same.''

In 1933, the name of the corporation was changed to Brink's, Incorporated.

The appellant is engaged in rendering various types of service to those who do not care to take the risk of carrying valuables from one place to another over the public highways, its operations being generally within the corporate limits of the cities where it does business. The main branches of its business are the following: (a) Transportation of valuables between a bank and other banks, express company offices, etc. (b) Taking a payroll check to bank, converting it into money and bring the money back. Sometimes also making up the pay envelopes and bringing them to the pay office and then conducting the pay, or standing guard while the pay is conducted. (c) Taking money to bank for a customer. (d) Furnishing a safe in which money is deposited preparatory to taking it to bank. Appellant assumes full liability for the contents of the safe, from the time the valuables are put in it, and furnishes a bond for protection. (e) Keeping a supply of money on hand so that customer's branches, as, for example, filling stations, may always be supplied with change.

In transferring money from one place to another, the appellant follows no fixed route but varies the route to suit its convenience and minimize the likelihood of holdups.

All work done is on a basis of a written contract usually for a year or more, which sets forth the work to be done, and the amount to be paid therefor in monthly installments. No two contracts are alike and it is not possible to make them uniform. The charge for the work is not dependent upon the distance travelled, the time consumed, nor alone upon the value of the articles carried. It is affected by the time when

the work is to be done, by the character of the district in which it is to be done, and by the value of the article; that it is impossible to make a uniform tariff of rates.

The appellant admitted that it was actively engaged in soliciting customers and that it advertised, at times, in an effort to secure new business. It has refused contracts where they were not remunerative, and where they involved the carrying of information which should be sent through the mails. The company is prepared to handle all the new customers and the new business it can get, provided it can agree on proper terms.

According to the testimony ex parte complainant, the charges for transportation would constitute an immaterial consideration as compared with the charges for the other services and protection rendered, and that it has not been able to separate one from the other; that it obtained its certificate of public convenience in September, 1933, but it had not, up to the time of the hearing, February 2, 1934, filed its tariff with the Public Service Commission; that it has a separate contract with each customer, and the rate varies according to the service rendered. In all respects, the testimony on its behalf is similar to that on behalf of respondent.

It is not contended that the contracts entered into by the appellants with its customers are subterfuges intended to evade the Public Service Company Law.

Under Art. 1, Sec. 1, of the Public Service Company Law (1913, P. L. 1374, Art. 1, Sec. 1; 1925, P. L. 587, Sec. 1; 66 PS 1) the term "Public Service Company" includes "...... all ...... common carriers, ...... doing business within this State, and also all persons engaged for profit in the same kind of business within this Commonwealth: ......"

As defined under said act, "The term 'common car-

rier,' ...... includes any and all common carriers, whether corporations or persons, engaged for profit in the conveyance of passengers or property, or both, between points within this Commonwealth, by, through, over, above, or under land or water, or both.''

The term "service" as defined under said act is broad enough to cover any service in connection with the business of a "common carrier," but its application must be limited in connection with *public* service, as distinguished from *private* service.

In 51 Corpus Juris 5 we find the distinction between public and private rendition of such service put definitely on the readiness to serve all members of the public to the extent of capacity.

(Sec. 2 B.) "The test is, therefore, whether or not such person holds himself out, expressly or impliedly, as engaged in the business of supplying his product or service to the public, as a class, or to any limited portion of it, as contradistinguished from holding himself out as serving or ready to serve only particular individuals. The public or private character of the enterprise does not depend, however, upon the number of persons by whom it is used, but upon whether or not it is open to the use and service of all members of the public who may require it, to the extent of its capacity; and the fact that only a limited number of persons may have occasion to use it does not make of it a private undertaking if the public generally has a right to such use.''

The same view is expressed by GAWTHROP, J., in the case of Overlook Development Co. v. P. S. C., 101 Pa. Superior Ct. 217, affirmed, per curiam, by the Supreme Court, 306 Pa. 43, 158 A. 869, as follows, p. 225: " 'The essential feature of a public use is, that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite or unrestricted quality, that gives it its public character': White v.

Smith, 189 Pa. 222, 228. ...... Its business is not 'affected with a public interest.' Therefore, it is not subject to public regulation. See Munn v. People of Illinois, 94 U. S. 113." To same effect see Boro. of Ambridge v. P. S. C., 108 Pa. Superior Ct. 298, 304, 165 A. 47.

"A private carrier is one who, without being engaged in the business of carrying as a public employment, undertakes to deliver goods in a particular case for hire or reward. He may carry or not, as he deems best. He is but a private individual and is invested, like all other private persons, with a right to make his own contracts." 10 C. J. 38, Sec. 4.

Unless the operator is a common carrier, the Public Service Commission has no power of regulation over him: Frantz v. Public Service Commission, 93 Pa. Superior Ct. 416.

"The duty of serving all without discrimination is one of the distinguished incidents of common carriage ...... What constitutes a common carrier is a question of law but whether one charged with being a common carrier has by his method of operation brought himself within that definition is a question of fact to be determined from the evidence in each case as it arises": Erb v. P. S. C., 93 Pa. Superior Ct. 421, 428, 429.

Whether a transfer company is a common carrier depends not on its charter but on the manner in which it conducts its business and the character of its operations: City Transfer Co. v. P. S. C., 93 Pa. Superior Ct. 210, 212.

For a comprehensive discussion of the term "common carrier" see opinion of our Brother PARKER in Dairymen's Cooperative Sales Assn. v. Public Service Commission, 115 Pa. Superior Ct. 100, 174 A. 826.

The sole question in this case is whether appellant, in the business conducted by it, is rendering a public

service and is, therefore, subject to the jurisdiction of the Public Service Commission.

As stated in Penna. Chautauqua v. P. S. C., 105 Pa. Superior Ct. 160, 160 A. 225, "From these and other authorities which might be cited, it is clear that the service which a company renders is determinative of the question whether or not it is a Public Service Company within the terms of our Public Service Company Act. A company which is in fact rendering service as a public utility cannot escape regulation on the ground that it has no charter right to render such service."

Without similarity of service, without uniformity of rates, and necessarily a different contract for service in each case and with each customer, we do not think that the services rendered by appellant come under the supervision of the Public Service Commission.

Before appellant's business can come under the supervision of the Commission, it must be clothed with a public interest and affect a substantial part of the community at large: Clark Light & Heat Co. v. Public Service Commission, 84 W. Va. 638, 100 S. E. 551. In so far as the public is concerned, the Commission regulation is designed to secure reasonable rates and adequate service. Where from the nature of the service this becomes impracticable, an attempt at regulation would be an idle gesture. The question of destructive competition is not involved unless the matter arises in connection with the exercise of a public service.

The Public Service Commission has been rendering valuable service in the regulation of transportation, but in so doing we should not take a paternalistic attitude by endeavoring to regulate purely private activities which do not involve public service.

The case has been well presented and able briefs submitted, but after careful consideration, we are of the opinion that appellant, in the manner in which its

business is conducted, is not a common carrier and does not require a certificate of public convenience.

The order of the Commission is reversed with the direction that the petition be dismissed.