Klawansky, Appellant, *v.* Public Service
Commission.

Argued March 16, 1936.

Before

KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*E. LeRoy Keen,* for appellant.

*Harry H. Frank,* with him *John C. Kelley, Samuel Graff Miller* and *Richard J. Beamish,* for appellee.

OPINION BY PARKER, J., September 30, 1936:

This is an appeal by R. Klawansky from an order of the Public Service Commission directing him to cease and desist from operating motor vehicles as a common carrier in Pennsylvania until he secures from the commission a certificate of public convenience, and certifying four trucks to the Secretary of Revenue for the cancellation of licenses.

On November 27, 1934, the commission upon its own motion ordered an inquiry and investigation to determine whether R. Klawansky had violated the Public Service Company Law, and a copy of the order was served upon him on January 28, 1935. After hearing the commission made a short order finding that following the filing of the complaint respondent had "trans-

ferred titles of two trucks to his wife and used the trucks in transportation under contracts with two concerns, himself furnishing service for two other concerns in other trucks, ...... that the transfer of the titles of the trucks and contracts to his wife is a subterfuge for the purpose of avoiding regulation of the Commission and was ineffective for that purpose, and further, that R. Klawansky has been operating motor vehicles for the transportation of property as a common carrier within the Commonwealth of Pennsylvania without the requisite approval of the Commission." The order directed the respondent to cease and desist from operating motor vehicles as a common carrier for the transportation of property within the Commonwealth of Pennsylvania until he obtains a certificate of public convenience and directed that the finding and determination of the commission should be certified to the Secretary of Revenue under the provisions of the Act of May 8, 1929, P. L. 1647 (75 PS 1171), for suspension of the licenses of two Dodge trucks and two International trucks described by manufacturers' numbers.

In sustaining the complaint the commission relied upon the testimony of the respondent, R. Klawansky, called for cross examination, and that of John F. Lennert, respondent's driver. We will give the substance of that testimony. In 1934 R. Klawansky was the owner of two International trucks, Manufacturer's Numbers A55418 and A56896, a Dodge truck, No. 8609428, and a trailer. About the first of February, 1935 respondent sold to his wife, B. Klawansky, the Dodge truck. When the hearing was held respondent was transporting freight for only two persons, Peter Greenberg & Sons and H. E. Miller. Prior to December, 1934 he had transported freight for Lykens Mercantile Co. and Nathan Peckman, as well as for the two firms first mentioned. This service was all per-

formed under written contracts between the parties and respondent. Having learned that "the Pennsylvania Railroad was investigating and they were going to stop me [him] from hauling", respondent about that time transferred to his wife, not only the Dodge truck, but the contracts with Lykens Mercantile Co. and Peckman because he thought he was not allowed to operate under more than two contracts. The hauling was done by respondent for his two customers in both directions. At times by direction of his customer he carried freight from Philadelphia to the customer and some of these shippers paid the freight. Since January 1, 1935 the wife has been transporting freight for Lykens Mercantile Co. and Peckman. There is not any direct evidence that respondent sought trade from the public or held himself out as ready to serve the public. He stated that he had all the business he wanted and could not handle more than that of his two customers with his facilities. He also stated that his wife operated independently of him.

The contention of the appellant is that while he has transported various articles in the past he was not a common carrier prior to the filing of the complaint, is not such now, has never held himself out as such, and has no desire to act as a common carrier. We are of the opinion that the findings of the commission are so indefinite that the record should be remitted to the commission for the purpose of making more specific findings of fact, to the end that a proper disposition of the case may be made. As the order now stands it is impossible for the respondent or the court to determine from the order what service the respondent has performed that made him a common carrier, or the service that he is directed to cease and desist. There is no finding of fact as to when the respondent acted as a common carrier other than that after the complaint was filed and after respondent transferred the two

trucks to his wife he used those trucks in transportation under contracts with two concerns and "himself furnished service for two other concerns in other trucks". But there is not any evidence to support a finding that he operated the two trucks transferred to his wife after such transfer.

We have only the general conclusion, which is a legal one *(Erb v. P. S. C.,* 93 Pa. Superior Ct. 421, 429), that the respondent has operated as a common carrier and as a result this court cannot properly review such conclusion. The commission is an administrative agency of the legislature to whom has been delegated a quasi judicial function to determine whether individuals have violated provisions of the Public Service Company Law, but it is required as a condition precedent to any order made by such commission that it make findings of fact and the validity of the order "must rest upon the needed finding. If it is lacking, the order is ineffective": *Panama Refining Co. v. Ryan,* 293 U. S. 388, 432, 55 S. Ct. 241, 253. This follows as a corollary to the established general principle and in this state to the statutory provisions of the Public Service Company Law that the acts of the commission are subject to judicial review. It is the commission which is the fact finding body in such a case as this and until the facts are determined it cannot be ascertained whether the order is in conformity with law.

While we have held that the certification to the Secretary of Revenue is a purely ministerial act and if there is a wrong done thereby the remedy should be directed against the Secretary of Revenue *(Bingaman v. P. S. C.,* 105 Pa. Superior Ct. 272, 275, 161 A. 892), yet the form of this order illustrates the necessity for findings of fact. In the absence of any finding indicating what vehicles were employed by respondent in transportation as a common carrier without a certificate of public convenience, the commission has directed that

four trucks by number shall be certified to the Secretary of Revenue for suspension of licenses. Included in this order was a Dodge truck, the number of which does not appear at any point in the record and which is not otherwise identified and yet the commission has certified two Dodge trucks to the Secretary for the cancellation of the licenses.

As the commission admits in its brief, its jurisdiction over owners and operators of motor vehicles in the transportation of freight and passengers is limited to those who are operating as common carriers. The legislature has never yet delegated to that commission the power to regulate all carriers using the public highways. It follows that unless the carrier is a common carrier the Public Service Commission does not have jurisdiction.

The mere fact that goods were transported by the respondent would not make the respondent a common carrier. Neither is proof that a carrier has transported property for more than two persons without other circumstances ordinarily sufficient to show that such a one is a common carrier. "A common carrier is one who undertakes, for hire or reward, to transport the goods of such as choose to employ him, from place to place": *Dwight v. Brewster*, 18 Mass. 50. This definition has been approved by our Supreme Court in *Beckman v. Shouse*, 5 Rawle 179, and by this court in *Blakiston v. Davies, Turner & Co.*, 42 Pa. Superior Ct. 390, 397, *Dairymen's Co-op. Sales Assn. v. P. S. C.*, 115 Pa. Superior Ct. 100, 107, 174 A. 826. "We express a doctrine universally sanctioned when we say, that anyone who holds himself out to the public as ready to undertake for hire or reward the transportation of goods from place to place, and so invites custom of the public, is in the estimation of the law a common carrier": *Lloyd v. Haugh*, 223 Pa. 148, 154, 72 A. 516. The status of one as a common carrier is not changed

by an occasional refusal to perform services for which he is equipped or by the fact that he does not advertise and the fact that one makes written contracts with his patrons is not controlling in determining that question: *Erb v. P. S. C.,* supra. On the other hand it does not follow that because a carrier has had a written contract with a customer such act makes him a public carrier. We must look for some circumstance in addition to the number of customers served to warrant a conclusion that a carrier has dedicated his property to a public use, unless the number is so large that it imports an offer to accommodate the general public. In *Brink's Express Co. v. P. S. C.,* 117 Pa. Superior Ct. 268, 274, 178 A. 346, we quoted with approval from Corpus Juris: "The public or private character of the enterprise does not depend, however, upon the number of persons by whom it is used, but upon whether or not it is open to the use and service of all members of the public who may require it, to the extent of its capacity; and the fact that only a limited number of persons may have occasion to use it does not make of it a private undertaking if the public generally has a right to such use." "The essential feature of a public use, is that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite or unrestricted quality, that gives it its public character": *White v. Smith,* 189 Pa. 222, 228, 42 A. 125. This excerpt was cited as applicable to a public service company in the case of *Overlook Dev. Co. v. P. S. C.,* 101 Pa. Superior Ct. 217, affirmed by the Supreme Court, 306 Pa. 43, 158 A. 869. It follows that the use must be so extensive as to imply an offer to serve all of the public or that there be other circumstances from which it may be reasonably inferred that the carrier was undertaking to serve *all* to the limit of his capacity. One, however, does not become a public carrier because he is engaged exclusively in transporting per-

sons or property or because the person or persons whom he serves take all his facilities. The test is whether he has invited the trade of the public.

We appreciate the difficulties with which the commission is confronted in determining the dividing line between public and private carriers and that many carriers who are serving one or a few firms have voluntarily submitted to regulation as public carriers. We also appreciate the opportunity that may exist for interference with the trade of licensed carriers. For these among other reasons we have determined to return the record to the commission to reconsider the matter and to make more specific findings that the questions raised may be passed upon. The question here involved is not whether regulation in such cases as the one here presented is desirable but whether respondent is subject to regulation under the Public Service Company Law.

The order of the commission is reversed and the record is remitted to it for such further action as it may deem proper not inconsistent with this opinion.