Weisberger et al., Appellants, *v.* Pennsylvania Public Utility Commission.

Argued April 27, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE STADT-
FELD, PARKER, RHODES and HIRT, JJ.

*Adolph Goldberg,* with him *Samuel A. Weiss,* for appellant.

*Thomas M. Kerrigan,* with him *Harry M. Showalter,* for appellee.

*Robert M. Carson,* for intervenor.

OPINION BY STADTFELD, J., July 19, 1939:
The appellants in this case were, by complaint of L.

M. Scholl, charged with operating as a common carrier without having a certificate of public convenience. This complaint was answered separately by the three respondents.

Max Weisberger denied common carriage but admitted owning a dairy and hauling milk from the farmers from whom it was purchased to his dairy, for which purpose he employed Herman Weisberger, one of the other respondents. He further admitted charging back to the farmers the cost of transportation in accordance with the regulations of the Milk Control Board. Herman Weisberger admitted this employment and denied common carriage. Robert Weisberger denied common carriage and any connection with these proceedings whatsoever except that he admitted ownership of the automobile in which the hauling was done.

At the hearing before the Public Utility Commission, it was shown that the complainant, a certified carrier, had previously hauled milk from seventeen farmers in Westmoreland County to the McKeesport Milk Company, owned and operated by Max Weisberger; that he had operated generally at the behest of the dairy, hauling only from such farmers as dealt with the dairy; that beginning with June 1938 the dairy informed the farmers that the milk purchased from them would be hauled in its own truck by the dairy's employee and that the selling farmers would be charged back the cost of this hauling. It was further testified that from that time the dairy did haul the milk by its own carrier to the dairy and charged back therefore a sum intended to be the cost of hauling. The number of farmers whose milk was hauled seems to have varied from seventeen to twenty-two. The charge back to the farmers of the cost of hauling made the cost of the milk delivered to the dairy conform to the regulations of the Milk Control Board.

The Commission issued a cease and desist order generally against the three respondents and imposed upon

them a $500 fine upon the testimony given at a hearing. From the order of the Public Utility Commission the respondents took this appeal.

The only question involved in this appeal is whether the respondents, or any of them, are common carriers under the facts involved and shown in the testimony.

The principles governing the instant case are discussed in a careful and elaborate opinion by our Brother PARKER in the case of *Dairymen's Co-Op. Sales Assn. v. P. S. C.* 115 Pa. Superior Ct. 100, 174 A. 826. It was there held that (1) a trucker who hauls milk for members of a co-operative association under a written contract with the association and the members, wherein he agrees that while in the performance of the contract he will only haul products, commodities or articles provided for under the terms of the contract, and that he will not solicit or receive articles for transportation from persons not designated by the association, is not a common carrier subject to the jurisdiction of the Public Service Commission; and (2) where a co-operative association, organized pursuant to the Act of April 30, 1929, P. L. 885, and its members contract with a trucker for the transportation of their milk, the trucker is not guilty of adopting a scheme or subterfuge to avoid the duties of a common carrier.

We do not think the fact that the respondent in the case cited was a co-operative association makes any difference in the application of the principles controlling. Judge PARKER in that case, on p. 106, citing *Harder v. P. S. C.*, 90 Pa. Superior Ct. 373, 375, and *Frantz v. P. S. C.*, 93 Pa. Superior Ct. 416, says, " 'In order to subject the appellant (respondent) to the jurisdiction of the Commission, it must be made to appear that he is a common carrier; that is, that he undertakes to carry for hire all persons indifferently who apply to him.' . . . . . . It is true, however, that the legislature cannot 'by mere legislative fiat' convert a private carrier into a public utility or make such owner a common carrier, for to do

so would be in violation of the due process clause of the federal constitution: *Frost v. R. R. Commission,* 271 U. S. 583, 48 S. Ct. 605; *Producers Trans. Co. v. R. R. Commission,* 251 U. S. 228, 230; *Michigan Commission v. Duke,* 266 U. S. 570, 577, 578.

"In *Gordon v. Hutchinson,* 1 W. & S. 285, Chief Justice GIBSON said that 'any man undertaking to carry the goods of all persons indifferently' is a common carrier. A similar definition and the one usually accepted is that given by the Chief Justice of Massachusetts in *Dwight v. Brewster,* 18 Mass. 50: 'A common carrier is one who undertakes, for hire or reward, to transport the goods of such as choose to employ him, from place to place.' This definition has been approved by our Supreme Court in *Beckman v. Shouse,* 5 Rawle 179, and by this court in *Blakiston v. Davies, Turner & Co.,* 42 Pa. Superior Ct. 390, 397. 'We express a doctrine universally sanctioned when we say, that any one who holds himself out to the public as ready to undertake for hire or reward the transportation of goods from place to place, and so invites custom of the public, is in the estimation of the law a common carrier.': *Lloyd v. Haugh,* 223 Pa. 148, 154, 72 A. 516. ...... The undertaking of these respondents to haul the milk consigned by members to the association for sale is not of itself, as we see it, an undertaking to haul milk even from that fixed territory to the place of delivery for all indifferently who may wish to have such service: *Toth v. P. S. C.,* 73 Pa. Superior Ct. 217; *Harder v. P. S. C.,* supra; *Beatty v. P. S. C.,* 110 Pa. Superior Ct. 461, 169 A. 21; *Frantz v. P. S. C.,* supra. The devotion of a carrier's facilities to the service of one person is not an offer to haul for all. Certainly it would not be contended that if a large department store in Pittsburgh or Philadelphia, making extensive deliveries of goods to customers in the city and counties of the section of the state in which it is located, should contract with an individual or corporation to make deliveries for such store alone and as the exclusive

business of the carrier, the carrier would by so doing even impliedly undertake to haul for all the public indifferently. Neither do we believe that it could be successfully urged that this association could not, without securing a certificate of public convenience, operate its own trucks for the purpose of gathering the milk of stockholders of the association exclusively: *Uncle Sam Oil Co. v. U. S.*, 234 U. S. 548, 561. ...... We do not regard the fact that the producer paid the carrying charges as of importance in determining the true relationship of these respondents to the public. It follows that unless there is something else to show that this plan was a mere scheme, device, or subterfuge to avoid the duties and responsibilities of a common carrier, the commission was without jurisdiction."

To the same effect is *Klawansky v. P. S. C.*, 123 Pa. Superior Ct. 375, 187 A. 248, wherein the same judge said, at p. 381: "...... 'The essential feature of a public use, is that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite or unrestricted quality, that gives it its public character': ...... It follows that the use must be so extensive as to imply an offer to serve all of the public or that there be other circumstances from which it may be reasonably inferred that the carrier was undertaking to serve *all* to the limit of his capacity." The public or private character of the enterprise does not depend, however, upon the number of persons by whom it is used, but upon whether or not it is open to the use and service of all members of the public who may require it, to the extent of its capacity: *Brink's Express Co. v. P. S. C.*, 117 Pa. Superior Ct. 268, 274, 178 A. 346; *Masgai v. P. S. C.*, 124 Pa. Superior Ct. 370, 374, 188 A. 599. In the former case cited, this court also stated at p. 276: "The question of destructive competition is not involved unless the matter arises in connection with the exercise of a public service."

In the instant case, the McKeesport Milk Company

was owned and operated by the appellant, (respondent) Max Weisberger. The title to the truck in which the hauling was done was placed in the name of Robert Weisberger, although the purchase money was that of his father and employer, Max Weisberger. The driver of the truck was another son, Herman Weisberger, employed by his father at a regular weekly salary. As to the respondents, Robert Weisberger and Herman Weisberger, it is clear that they were merely employees of the McKeesport Milk Company, owned by their father. The only individual actually involved in this complaint is the appellant, Max Weisberger.

The facts in the present case, as supported by the testimony, disclose that only such producers could put their milk on the respondent's truck as were selling to him, and that the deduction from the producer's invoice of the charges for transportation was in compliance with the regulations of the Milk Control Board, in order to maintain a uniformity of price. It appears, therefore, that the owner of the dairy was transporting only the very goods he had contracted to purchase. In other words, the purchaser was his own carrier. Clearly, there was no undertaking to transport milk for the general public for compensation. Neither was the purchaser acting in the capacity of an intermediary in doing his own hauling, the transported product being necessary for the conduct of his own business as a dairyman. It is clear that the hauling of the milk to his own dairy from the several farms comprising his source of supply was merely incidental to the conduct of his business as a dairyman. Manifestly, the purchaser could not enter into a contract with himself for the purpose of hauling milk, nor did he undertake for compensation to provide transportation of goods for the general public. It follows, therefore, that the situation here presented is properly neither a "contract carrier" nor a "common carrier" case within the definitions and meaning of the Act of Assembly of May 28, 1937, P. L.

1053, known as the "Public Utility Law" (66 PS §1101 et seq.). This conclusion is in no manner altered by our recognition of the difference in the definitions of terms set forth in the Public Utility Law, from those established in the Public Service Company Law and its amendments.

Considerable space has been devoted by both appellant and appellee to the discussion of the question of the passing of title, whether at the time of the delivery to the truck operated by the respondent, or at the time of delivery at respondent's dairy and the acceptance of the milk on its compliance with the tests required by the Milk Control Board. We do not think it necessary to enter into a discussion of this question or to decide the case on narrow technical grounds. We prefer to base our conclusion on the broader ground which we have hereinbefore discussed.

The order of the Commission is reversed with the direction that the petition be dismissed at the costs of the intervening appellee.