Philadelphia Association of Wholesale Opticians,
Appellant, *v.* Public Utility Commission.

Argued October 8, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES,
HIRT and KENWORTHEY, JJ.  (STADTFELD, J., absent).

*Joseph L. Ehrenreich,* for appellant.

*Frederick L. Kiger,* with him *Harry M. Showalter* and *Claude T. Reno,* Attorney General, for appellee.

*Richard V. Zug,* of *Shertz & Zug,* with him *Joseph Sharfsin,* for intervening appellees.

OPINION BY KELLER, P. J., March 10, 1943:

This was a proceeding begun by complaint of the Pennsylvania Public Utility Commission, acting of its own motion.

On October 14, 1941 it filed a complaint against Philadelphia Association of Wholesale Opticians, charging:

"1—That [it] is not a bona fide cooperative association transporting property exclusively for the members of such association on a nonprofit basis, within the contemplation of the Public Utility Law.

"2—That on September 5, 1941 [it] transported property by motor vehicle for compensation between points in the City of Philadelphia in violation of the Public Utility Law. [citing four specific deliveries of optical goods].

"3—That beginning on or about August 4, 1941, and continuously since, [it] has held out and provided a regular daily delivery service by motor vehicle for compensation to the following optical supply houses located in Philadelphia in violation of the Public Utility Law, [naming 13 optical Companies]."

The preamble to the complaint set forth that the commission had received information that the said respondent was engaged in furnishing transportation of property by motor vehicle for compensation, between points in Pennsylvania "without first securing a certif-

icate of public convenience or permit from the Pennsylvania Public Utility Commission as required under the provisions of the Public Utility Law," and was thereby violating the Public Utility Law; but the *complaint charged* only what we have set forth above.

It will be noted that neither in the preamble of the complaint, nor in the complaint itself, is there a definite charge that the respondent is illegally operating as a 'common carrier' or as a 'contract carrier'; but examining the Public Utility Law of May 28, 1937, P. L. 1053, we find that the only provision in it which specifically relates to "a bona fide cooperative association transporting property exclusively for the members of such association on a nonprofit basis"—and, therefore, is "within the contemplation of the Public Utility Law"—is section 2, paragraph (5), which in defining a *"common carrier,"* specifically excludes "any bona fide cooperative association transporting property exclusively for the members of such association on a nonprofit basis." This was in accord with the later clause (17) in section 2, which in defining "Public Utility," as meaning "persons or corporations now or hereafter owning or operating in this Commonwealth equipment or facilities," for seven named general classes of public service, including "(c) Transporting passengers or property as a common carrier," annexes the following general clause applying, so far as pertinent, to all seven general subdivisions:

"The term 'Public Utility' shall not include (a) any person or corporation, not otherwise a public utility, who or which *furnishes service only to himself or itself;*[1] or (b) any bona fide cooperative association which furnishes service only to its stockholders or members on a nonprofit basis; or (c) any producer of natural gas

---

[1] See *Weisberger v. Penna. P. U. Comm.,* 137 Pa. Superior Ct. 17, 23, 7 A. 2d 731; *Allaman v. Penna. P. U. Comm.,* 149 Pa. Superior Ct. 353, 364, 27 A. 2d 516, 519.

not engaged in distributing such gas directly to the public for compensation."[2] (Italics supplied).

It seems clear, then, that in averring, as it did in charge 1, that Philadelphia Association of Wholesale Opticians did not come within the exception to the definition of a "common carrier,"—in connection with the charge that it was transporting property by motor vehicle for compensation, in violation of the Public Utility Law—the commission, in effect, charged that the respondent was illegally transporting such property as a "common carrier," for which a *certificate* of public convenience had to be obtained from the commission before it could legally do so.

Had it intended to charge that respondent was illegally operating as a "contract carrier," the exception in the statute would have been different, and the charge would have been that it was not a "bona fide *agricultural* cooperative association transporting property exclusively for the members of such association on a nonprofit basis." (Acts of June 15, 1939, P. L. 387 and July 3, 1941, P. L. 267).

The complaint was unskilfully drawn—every respondent is entitled to know just what it is charged with—but that is its necessary meaning if proper effect is to be given to all of its language.

The answer of the respondent categorically denied the first charge of the complaint and averred that it was a nonprofit corporation existing by virtue of a charter granted by Court of Common Pleas No. 4 of Philadelphia County, as of December Term 1925, No. 3833, with the purpose, inter alia, to "encourage sociability among its members and *promote and protect their interests, without the corporation deriving any profits, either directly or indirectly.*" It averred: "That the needs of the members of said association require that the optical goods manufactured and sold by them

[2] See *The Pipe Line Cases*, 234 U. S. 548, 562.

should be collected and delivered promptly from and to optometrists with whom said members conduct business, and that in order to promote and protect the needs of the members of said association, said association did inaugurate a service for the collection of optical goods and for their re-delivery between members of the association and optometrists who are the customers of said members and without which service the business of the members of the association would be handicapped and adversely affected materially.

"All property (consisting exclusively of optical goods) transported by Philadelphia Association of Wholesale Opticians is so transported for members of the association exclusively, and for no other person, persons or corporations; and said property is transported without profit to the association or any member thereof, or to any other person, persons or corporations; that the property is transported exclusively for said members and for the promotion and maintenance of their business, and that no property is transported except for members between themselves and their customers and that said association does not hold itself out to the general public nor to persons or corporations not members of the association as undertaking to transport property; that all funds derived from the members for the maintenance of such delivery service [are] used entirely and exclusively in the payment of wages of its employees, rent, telephone, insurance charges and for such other facilities as are necessary for the proper maintenance of the service for the benefit of the members of the association exclusively."

As to the second charge, respondent admitted that it had transported the optical goods stated in the complaint, but denied that it had transported them *for compensation,* within the meaning and intendment of the Public Utility Law. It averred that said transportation was without compensation and was in pursuance of a resolution of the board of directors of said asso-

ciation adopted at a regular meeting held August 6, 1941, providing that said association should organize, maintain and operate a messenger delivery service exclusively for the benefit of such members of the association as desired to use it; and that all of the *expenses* of such service should be borne exclusively by such members as should use it, by contributing such amount or proportion of said expenses as they shall mutually arrange among themselves; and that a committee of three should be chosen with full power to operate said service and direct and supervise it for the benefit of the members of the association. The answer continued: "that no compensation was or is paid to any person or persons or to the association for the transportation of said packages, except salaries of employees. Contributions are received from each of the members using said service, which contributions are sufficient only for the payment of the operating expenses of said service namely, wages of employees, rent, telephone, insurance, taxes, etc. and afford no profit to any person or persons, corporations or to the association and that no compensation is paid to or received by the association, and that no compensation is paid to or received by the association for the transportation of such property."

By way of answer to the third charge, respondent denied that it had or has held out and provided a regular daily delivery service by motor vehicle for compensation to the optical houses named in said charge. It averred that on the contrary the said optical companies so named are all members of the respondent association and that three of them, Marcus-Rothschild Co., Home Optical Co. and J. E. Limeburner Co. while members of the association do not use the service provided by respondent for the transportation of property of the members of said association for their exclusive benefit. It further averred "that no compensation is paid for said service by any of the members of said association, but that said members using the service

contribute sums of money necessary to pay the operating expenses of said service; and said service is conducted through a committee of the board of directors of said association who serve without compensation and that said service is maintained exclusively for the welfare and benefit of the members of the association, and not for the benefit of any other person or persons or corporation, nor is said delivery service open or offered to the general public and that transportation is made only of products and property of the members of the association between themselves and their customers, and said association does not hold itself out to the general public as a carrier of property. The association is advised by counsel and therefore avers that the service so rendered by the association exclusively to its members is not any violation of the public utility code of the Commonwealth of Pennsylvania or any statute or decisions relating thereto and that said service is that of a bona fide cooperative association which furnishes services only to its members on a nonprofit basis and therefore respectfully requests that said complaint be dismissed."

We have recited the averments of the answer at such length because the commission offered no testimony in support of its charges, but chose to rest its case on the admissions contained in the respondent's answer. The respondent produced testimony which supported the averments in the answer. The testimony also showed that the members of the respondent association who availed themselves of the transportation service rendered by the association for its members exclusively, paid a fixed weekly contribution, to meet the expenses incurred thereby, ranging from $36 to $100, mutually agreed upon as representing the respective member's fair and reasonable proportion of such expenses, based on the volume of his delivery service; but that said amount having proved inadequate because of unusual

expenses, every such member made an additional flat contribution of $3 a week.

On February 16, 1942 the commission filed its report and order, finding (1) that respondent "is not performing or holding out a common carrier's service. The service is limited to members of the association and is performed only for those members of the association who request it and who agree to pay for the service performed."

It found, however, (1) that the respondent is not a bona fide cooperative association within the contemplation of the Public Utility Law; and (2) that the respondent association has transported property for compensation between points in Pennsylvania without authority of the Pennsylvania Public Utility Commission in violation of the Public Utility Law.

It entered an order sustaining its complaint against the respondent and ordered that it "immediately cease and desist any and all transportation for compensation between points in Pennsylvania, unless or until a *certificate of public convenience* or permit, authorizing such transportation, shall first be obtained."

Respondent appealed.

It will be noted (1) That the commission found that respondent was not engaged in *common carrier service* and yet in its order it nevertheless specifically included the obtaining of a *certificate of public convenience,* which applies only to common carriers. (2) The commission did not specifically find that respondent was engaged in contract carrier service, yet it required it to obtain either a certificate of public convenience as a common carrier or a permit as a contract carrier, before it could continue to furnish service to its members.

Counsel for the commission very frankly and very properly stated in their brief "that the Commission has not and does not now charge fraud, deceit, subterfuge, or lack of good faith in appellant's operations."

It must be borne in mind that the respondent did not *raise the question* whether it was "a bona fide cooperative association transporting property exclusively for the members of such association on a nonprofit basis, within the contemplation of the Public Utility Law." The commission raised it in its complaint, by *averring that it was not,* thereby inferring that it was a public utility performing common carrier service. See sec. 2, par. (5). The averment was only material if the respondent was, apart from that averment, a common carrier. But the commission has expressly found that it is not a common carrier. Hence a certificate of public convenience cannot be required of it. But we are unwilling to hold that the exception is restricted to cooperative associations specially incorporated as such; as, for example, under the Act of June 7, 1887, P. L. 365; for those associations are not incorporated or operated on a nonprofit basis—(section 15); nor is the exception confined to cooperative *agricultural* associations incorporated under the Act of June 12, 1919, P. L. 466, as amended by Act of May 1, 1929, P. L. 1201, for the averment in the charge did not mention *agricultural* cooperative associations, cf. section 2, par. (7); and *their* operations are not limited to "members" exclusively but are furnished to "patrons" who are not members. Nor does it apply to cooperative agricultural associations incorporated under the Act of April 30, 1929, P. L. 885, for they are not operated on a *nonprofit* basis, nor are their operations limited to *"members" exclusively.* We simply point out that none of those corporations falls strictly within the terms of the exception. On the other hand any bona fide cooperative association or corporation, that furnishes service only to its members on a nonprofit basis—whether it is expressly *labeled* as *cooperative* or not, is not a public utility within the Public Utility Law. If its transportation operations are bona fide cooperative and are performed on a nonprofit basis,

exclusively for its members, it is not a common carrier and needs no certificate of public convenience. See *American Medical Assn. v. United States,* 317 U. S. 519, (January 18, 1943) where Mr. Justice ROBERTS speaking for the Court said, "Group Health is a membership corporation engaged in business or trade ...... The fact that it is cooperative and procures service and facilities on behalf of its members only, does not remove its activities from the sphere of business." That, not the *label* of incorporation, is the test of 'cooperative.' A company or association that operates on behalf of its members exclusively is cooperative. The respondent, in its transportation operations, is a bona fide cooperative association which transports property exclusively for members of the association on a nonprofit basis and is in no sense a common carrier or a public utility.

Moreover, we are of opinion that appellant is not transporting property *for compensation* within the meaning of the Public Utility Law.

The commission seems to be under the impression that every one who transports property within this Commonwealth is either a common carrier or a contract carrier, and subject to its regulation. We have tried several times to disabuse it of that impression but, apparently, without success. See *Weisberger v. Penna. P. U. Comm.,* 137 Pa. Superior Ct. 17, 23, 7 A. 2d 731; *Allaman v. Penna. P. U. Comm.,* 149 Pa. Superior Ct. 353, 27 A. 2d 516. Even the Interstate Commerce Commission Act, in providing for the regulation of "motor carriers", which include both common carriers by motor vehicle and contract carriers by motor vehicle, does not regulate "private carriers" of property by motor vehicle, beyond prescribing reasonable requirements to promote safety of operation. U. S. Code, Title 49, secs. 303, (14), (15), (16), (17), 304(1), (2), (3).

Strictly speaking only *common* carriers are public utilities. See sections 2(6) and (17)(c) and 403-407.

The commission is given limited jurisdiction over contract carriers by motor vehicle by Article VIII, only because, in order effectively to regulate common carriers by motor vehicle in the public interest, it was found necessary to regulate the *service* of contract carriers by motor vehicles, in the following particulars:

To prescribe minimum rates which are just and reasonable and to establish requirements with respect to uniform systems of accounts, records, reports, preservation of records, safety of service and equipment and insurance, sec. 802(a) and ......

To classify contract carriers by motor vehicle, as the special nature of their service shall require, sec. 803.

And by section 804 (as amended by Act of July 3, 1941, P. L. 267, a *permit* must be obtained from the commission before a contract carrier by motor vehicle can render service as such.

The sole purpose in view in thus giving the commission limited authority to regulate the *service* of contract carriers by motor vehicle, is—as was expressed in the declaration of public policy in section 801—in aid of the public interest to promote safe, adequate, economical and efficient service by *common carriers* by motor vehicle and just and reasonable rates therefor, without unjust discrimination and unfair or destructive practices, and to improve the relations between common carriers and other carriers, and coordinate their services, so as to develop and preserve a safe highway transportation system properly adapted to the needs of the commerce of the Commonwealth. One of the main purposes in view was to prevent carriers by motor vehicle, which were in reality doing common carrier service, from masquerading as contract carriers, and thus escape the full regulation imposed by the Act on common carriers, thereby injuring and discriminating against common carriers to the damage and detriment of the public interest. See *Merchants Parcel Delivery,*

*Inc., v. Penna. P. U. Comm.*, 150 Pa. Superior Ct. 120, 129-132, 135, 28 A. 2d 340.

Unless such regulation of contract carriers tends to benefit the public interest in common carriers furnishing *public* service, there is no constitutional ground for its inclusion as part of the law regulating utilities.

Now a reading of the eighth article, which deals with contract carriers by motor vehicle, and the provisions relative to the *charges* for transportation and the filing of contracts and schedules of rates to be charged for transportation, which give authority to the commission to inquire and determine whether any such rate or practice of the contract carrier contravenes the policy declared in section 801 above, relative to the promotion of safe, adequate, economical and efficient service by *common carriers* by motor vehicle, and, if so found, to prescribe such minimum rates and such practices as may be just and reasonable to promote said policy (sec. 810), show that the compensation, rates, etc., thus to be prescribed are not applicable to a situation such as this, where the members of a cooperative association simply divide among themselves the cost or expenses of the operations, without profit to them or any of them. That is, that the respondent is neither a 'common carrier' nor a 'contract carrier' within the purview of the Public Utility Law.

If three neighbors, A, B and C, hire a chauffeur—a mere employee—to drive their children to and from school and divide the expenses incident thereto among themselves, either equally or in proportion to the number of children in each family, or in such other way as they mutually agree upon, without any profit or compensation to any of them, it is nobody else's business.[3]

And if nine or ten persons or corporations engaged in the same kind of business, requiring special and in-

---

[3] We are referring to normal times, without reference to gasoline rationing.

dividual delivery service, use a nonprofit business corporation, of which they are all members—chartered to promote and protect their interests—to act as their agent in furnishing transportation to them and to nobody else, and agree to divide the expenses of operation among themselves in such a manner as is mutually agreeable to all of them, without profit or compensation to any of them, that, too, is their affair and not subject to the regulation of the Public Utility Commission, beyond satisfying the commission that it is bona fide and not a subterfuge or deceptive device adopted to escape the regulation applicable to contract carriers by motor vehicle, and that proper provision has been made to protect the public by casualty insurance, workmen's compensation insurance, etc.

If such subterfuge or deceptive device or collusion is present, the commission can always act in protection of the public. See *Allaman v. Penna. P. U. Comm.,* 149 Pa. Superior Ct. 353, 361, 27 A. 2d 516, 519. But the mere fact that the cooperative service is more satisfactory and adequate than some prior contract carrier service, or common carrier service, which it displaced is no ground for action by the commission. See *Weisberger v. Penna. P. U. Comm.,* 137 Pa. Superior Ct. 17, 19, 7 A. 2d 731.

The order is reversed and the complaint is dismissed at the costs of the Pennsylvania Public Utility Commission.