## Commonwealth v. Cerra et al.

*Gabriel D. Weiss*, for Commonwealth.
*Alex Marcus*, for defendants.

ROBINSON, J., October 27, 1948.—Defendants were twice arrested upon warrants issued on the information of an investigator of the enforcement division of the Pennsylvania Public Utility Commission. In each case the informations charged separate violations of the Public Utility Law of May 28, 1937, P. L. 1053, art. VIII, sec. 1311, as amended July 3, 1941, P. L. 267, sec. 4, in that defendants on two different

occasions operated as a motor carrier without a certificate of public convenience, permit or license. For the first offense they were adjudged guilty by the magistrate and fined the sum of $100. For the second offense they were also adjudged guilty and fined the sum of $200.

Appeals were taken to this court by special allowance.

Defendants are partners, trading as "Newton Amusement Park", at Newton Lake in Lackawanna County. They operate a dance hall, various amusements and concession stands in the park, and in addition thereto own and operate an amphibious motor vehicle known as a "duck". The duck is operated partly on the waters of Newton Lake, a privately owned body of water, and partly on land.

Defendants have a lease with one of the owners of the land covered by the waters of the lake and constructed a platform near the lakeside. They maintain a driveway leading from the platform into the water. The patrons of the amusement park who desire to ride the duck are loaded into the vehicle at the platform from which it proceeds on land into the water. The vehicle is then operated around the shores of the lake returning to the place of beginning and, emerging from the water to the land, discharges the patrons at the platform. No stops are made by the vehicle on the trip around the lake for the purpose of picking up or discharging passengers, and the vehicle returns to the platform without rendering any intermediate service.

Defendants display a large sign reading "ride the duck" on a building near the point of loading and unloading. The sum of $.25 is charged each patron wishing to undertake the ride. Defendants maintain no call or demand or schedule service, but when enough patrons appear to make the operation prof-

itable the amphibious vehicle is put into operation and embarks on a trip of approximately two miles.

The convictions are only valid if the operation of the amphibious vehicle constitutes such a service that will bring defendants, rendering it, under the definition of a common carrier, thus requiring them to secure from the Public Utility Commission a certificate of public convenience.

A common carrier is defined by the Public Utility Law of May 28, 1937, P. L. 1053, art. I, sec. 2, as variously amended, 66 PS §1102, as follows:

" 'Common Carrier' means any and all persons or corporations holding out, offering, or undertaking, directly or indirectly, service for compensation to the public for the transportation of passengers or property, or both, or any class of passengers or property, *between points within this Commonwealth* by, through, over, above, or under land, water, or air." (Italics supplied.)

If defendants are in fact common carriers then they are within the definition of "common carrier by motor vehicle" and the vehicle in use is also within the definition of "motor vehicle" as both are defined by section 2 of the Public Utility Law.

While counsel for the respective parties in the case have argued and briefed, exhaustively, many phases of the Pennsylvania Public Utility Law, the primary question presented by the evidence in this case is whether the business conducted by defendants at Newton Lake constitutes them common carriers so as to bring them under the regulations of the Public Utility Law requiring them to have a certificate of public convenience, and subjecting them to the penalties of the statute for their failure to do so.

The question whether or not a particular service is a public utility is a judicial one and must be deter-

mined as such by a court of competent jurisdiction: 51 C. J. 3.

It has been held that the word "service" as used in the definition of a common carrier means a public service: Brink's Express Co. v. P. S. C. et al., 117 Pa. Superior Ct. 268.

Also important in the determination of defendants' status under the above definition of common carrier is the meaning of the words "holding out". They have been held, by our appellate courts, to mean "holding one's self out as engaged in the business of transporting passengers": Harder v. P. S. C., 90 Pa. Superior Ct. 373, 376.

Thus our inquiry is necessarily directed to the nature of the business conducted by defendants at Newton Lake. To our mind, it has none of the characteristics common to the conception of a public utility. Defendants are the operators of an amusement park. The essential purpose of the venture is to provide the public with amusement, entertainment and relaxation for profit. Such a business naturally has many and varied aspects. The defendants offer to the public a place for picnics, outings and gatherings; they serve food and drink to the public; they maintain facilities for bathing and boating; they promote dances and games, and maintain devices calculated to separate the public from its money. A "ride" on devices common to amusement parks is not transportation as we understand the term.

It is in connection with the amusement business that the amphibious vehicle is operated by defendants. It is advertised merely as a "ride on the duck". In no sense of public service is it held out as a vehicle of transportation. Those patronizing the device do so for the novelty that attends a ride in a vehicle which operates both on land and water. The operation of

the device is part and parcel of the amusement park and the seasonal business which is conducted thereat by defendants.

The legal concept of public service as it is understood in the field of public utility regulation is no more applicable to the operation of defendants' "duck" than it is to the carrousel or the hot dog stand. We cannot find that defendants are engaged in public service to the extent that they are holding themselves out as engaged in the business of the transportation and carrying of passengers for hire.

In Brink's Express Co. v. P. S. C. et al., 117 Pa. Superior Ct. 268, at p. 276, it was said:

"Before appellant's business can come under the supervision of the Commission, it must be clothed with a public interest and affect a substantial part of the community at large: Clark Light & Heat Co. v. Public Service Commission, 84 W. Va. 638, 100 S. E. 551."

It has been repeatedly held that where a business is without the sphere of utility regulation as defined by the encompassing provisions of the Public Utility Law, those who operate that business cannot be subjected to its supervision, control and regulation: Toth et al. v. Public Service Commission, 73 Pa. Superior Ct. 217; Harder v. Public Service Commission, 90 Pa. Superior Ct. 373; Aronimink Transportation Co. v. Public Service Commission, 111 Pa. Superior Ct. 414; Dairymen's Co-Op Sales Assn. v. Public Service Commission, 115 Pa. Superior Ct. 100; Brink's Express Co. v. Public Service Commission, 117 Pa. Superior Ct. 268; Weisberger et al. v. Pa. P. U. C., 137 Pa. Superior Ct. 17.

It follows that they need not answer for a failure or refusal to meet its requirements.

Now, October 27, 1948, the appeals from summary convictions are sustained, defendants are adjudged not guilty and are discharged.