Protective Motor Service Company, et al. *v.* P.U.C. and Edward J. Ring Detective Agency, Inc., Intervenor.

Argued November 5, 1971, before President Judge BOWMAN and Judges KRAMER, WILKINSON, JR., MENCER and ROGERS.

*James W. Patterson,* with him *Morgan, Lewis & Bockius,* for appellant.

*Larry Gesoff,* Assistant Counsel, with him *Edward Munce,* Acting Counsel, for appellee.

*Joseph M. Gindhart,* with him *Eugene R. Lippman* and *Krusen, Evans and Byrne,* for intervenor.

OPINION BY JUDGE MENCER, January 5, 1972:

This is an appeal by Protective Motor Service Company (Protective) and Brink's, Inc. (Brink's), from an order of the Pennsylvania Public Utility Commission (Commission), dated August 24, 1970, dismissing, for lack of jurisdiction, an application of Edward J.

Ring Detective Agency, Inc. (Ring). On April 29, 1969, Ring filed an application with the Commission for the "right to begin to transport, as a contract carrier, by motor vehicle, money, from shipping offices or banks in the City and County of Philadelphia, to vessels moored or anchored at the Port of Philadelphia which is located in the Counties of Bucks and Delaware and the City and County of Philadelphia."

Protests to the application were filed by Protective and Brink's.[1] The Commission held a hearing which required three days to be completed. Following the Commission's order, Protective and Brink's filed this appeal and Ring was granted leave to intervene. The Commission and Ring have filed motions to quash the appeal but these motions are hereby denied.

An examination of the record discloses that Ring was formed in 1923 to provide guard and escort services on the waterfront for vessels using the Port of Philadelphia. Ring personnel are used for gangway guards, cargo watchmen, escort services, accompanying ships' personnel from vessels to hospitals or detention centers, and delivering money to captains on board ships. Ring engages in a check processing service in addition to its guard and escort service. Usually, Ring's service in this aspect is requested by a ship's agent upon notification by the ship's owner or captain that money will be needed when the ship arrives at the Port of Philadelphia. The captain usually desires money to be delivered so that he may pay members of his crew that are about to leave the ship and so that he may purchase necessary supplies. Various factors such as weather and river conditions make it difficult to predict the ship's arrival time. Either the owner or the agent issues a check

[1] M. Pollon, Inc., t/d/b/a Marine Guard Service, also filed a protest to the application with the Commission but it did not appeal from the Commission's order of August 24, 1970.

which is picked up by Ring at the agent's office. Thereafter, Ring takes it to a bank and converts it to cash and transfers the same to the ship. When the ship does not arrive as scheduled or when its arrival is during nonbanking hours, it is necessary for Ring to take the money to its office and retain it until the ship's arrival. Ring makes these money transfers in its unmarked and unarmored vehicles operated by a guard not in uniform and accompanied by one or more other armed guards.

The Commission's order of August 24, 1970, dismissed Ring's application for the reason that the transportation of money from shipping offices or banks to vessels was incidental to Ring's principal business of providing security services. Ring's business generates ninety percent of its income from guard service, eight percent from escort services and two percent from check cashing and payroll deliveries.

Protective and Brink's challenge the conclusion of the Commission that the transportation of money was incidental to any or all of Ring's activities. *Black* defines "incidental" as: "Depending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal; something incidental to the main purpose". *Black's Law Dictionary* (4th ed. 1951). "Incident" is explained by *Bouvier* in this way: "This term is used both substantively and adjectively of a thing which, either usually or naturally and inseparably depends upon, appertains to, or follows another that is more worthy. . . ." 1 *Bouvier's Law Dictionary* (8th ed. Rawle 1914).

The uncontradicted testimony in the record leads us to hold that Ring's transportation of money was incidental to its principal business of providing security services. Such a holding is not novel in this Commonwealth. The Superior Court has upheld Commission orders premised on findings that the transportation

portion of a service rendered to the public was incidental to the service as a whole and therefore was not subject to the Commission's jurisdiction.

In *Aronimink Transportation Co. v. P. S. C.,* 111 Pa. Superior Ct. 414, 170 A. 375 (1934), it was held that, where a corporation owning two large apartment buildings operated a passenger bus between the buildings and a railway terminal for the exclusive use and convenience of the tenants, such operation was incidental to the main business of maintaining the apartment buildings and not within the jurisdiction of the Public Service Commission. In *Brink's Express Company v. Public Service Commission,* 117 Pa. Superior Ct. 268, 178 A. 346 (1935), it was held that in the operation of armored trucks for the transfer of money from place to place, where this was carried on without similarity of service, without uniformity of rates, and where it necessitated a different contract for service with each customer, carrier was not a common carrier and not subject to the jurisdiction of the Public Service Commission.

The transportation of goods and personal property by the operator of a warehouse from its warehouse to its customer's home or place of business was said to be incidental to the general warehousing business in *Haugh & Keenan Storage and Transfer Company v. Pennsylvania Public Utility Commission,* 133 Pa. Superior Ct. 175, 2 A. 2d 548 (1938). The transportation of milk by the owner of a dairy to his own dairy from the several farms comprising his source of supply was held to be merely incidental to the conduct of his business as a dairyman and not subject to the jurisdiction of the Commission in *Weisberger v. Pennsylvania Public Utility Commission,* 137 Pa. Superior Ct. 17, 7 A. 2d 731 (1939). In *C. W. Allaman v. Pennsylvania Public Utility Commission,* 149 Pa. Superior Ct. 353, 27 A. 2d 516 (1942), where a coal dealer purchased coal from

various mines and transported the coal in his own trucks to his customers, it was held that the trucking was in fact the delivery of his own property and similar to the factual situation of *Weisberger v. Pennsylvania Public Utility Commission, supra.*

We conclude under the facts here that the Commission does not have jurisdiction of Ring's transportation of money which we view to be incidental to its principal business of providing security services.

Order affirmed.