Walsh, Appellant, v. Philadelphia School
District.

Argued October 14, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Wesley H. Caldwell,* with him *Abraham Koppelman,* for appellant.

*Franklin S. Edmonds,* with him *Edward B. Soken* and *J. Warren Brock,* for appellee.

OPINION BY RHODES, J., April 16, 1941:

Plaintiff brought an action in assumpsit in the Municipal Court of Philadelphia County to recover from the School District of Philadelphia the sum of $7 alleged to be owing by defendant to her under a written contract entered into between them on March 8, 1938, pursuant to the Teachers' Tenure Act of April 6, 1937, P. L. 213, which amended the School Code of May 18, 1911, P. L. 309, and its supplements, 24 PS §§1121, 1126, 1128a, 1161, 1201, 1202. See, also, *Teachers' Tenure Act Cases,* 329 Pa. 213, 197 A. 344. The matter was heard by BLUETT, J., who resolved the questions of law raised by defendant's affidavit of defense in lieu of demurrer in favor of defendant, and entered judgment for defendant. Plaintiff appealed.

Under Rule 61 of this court the Women Teachers' Organization, a body composed of teachers with interests similar to those of appellant, has filed a brief.

Appellant, since September, 1924, has been employed by defendant as a junior high school teacher. By the Teachers' Tenure Act of 1937, she became entitled to receive a written contract from defendant, and the same was entered into on March 8, 1938, in the form required by that act, and therein her annual salary was fixed at $2,800. The Act of June 20, 1939, P. L. 479, amending section 532 of the School Code of May 18, 1911, P. L. 309, 24 PS §571, authorized school boards of first-class districts "in order to bring the expenditures of the district within the annual estimate of available revenue

......, to make such general adjustments and reductions in salaries fixed by law, including salaries of the professional employes, as in the judgment of the board may be proper and necessary......," but limited reductions in salaries by the following provision: "In making any general adjustment and reduction in salaries, the decreases shall be within the limits of one per cent (1%) to five per cent (5%) of the several compensations fixed by law for such positions as may be affected, and, for purposes of this act, the board may classify employes, and the decreases shall be confined to employes who prior thereto were receiving compensation of twenty-five hundred dollars ($2500) or more per annum."

Section 532 of the School Code, as amended by section 1 of the Act of June 20, 1939, P. L. 479, 24 PS §571, also contains a provision for the disposition of any surplus of income accumulated at the end of a year because of such reductions, as follows: "...... and, in any instance where the power to make a general decrease in salaries below the minimums fixed by law has been exercised, if at the end of the year for which the power was exercised there is a surplus of revenue, such surplus shall be used to make up to the employes whose salaries have been affected by the general reduction as much of the loss of salary as an equitable division of the surplus on a pro rata basis among all such employes will permit."

As reference is hereafter made to the title of the Act of June 20, 1939, P. L. 479, 24 PS §571 et seq., the same is printed in the margin.[1]

---

[1] "To amend and reenact section five hundred and thirty-two of an act, approved the eighteenth day of May, one thousand, nine hundred and eleven (Pamphlet Laws, three hundred nine), entitled 'An act to establish a public school system in the Commonwealth of Pennsylvania, together with the provisions by which it shall be administered, and prescribing penalties for the violation thereof; providing revenue to establish and maintain the same, and the method of collecting such revenue; and repealing

On December 12, 1939, the board of education of defendant school district passed a resolution reducing the salaries of all employees in excess of $2,500, which were not subject to reduction during 1939, by 5 per cent, effective on January 1, 1940. Appellant's annual salary of $2,800 was thereby reduced by 5 per cent, or $140 per annum, and accordingly defendant deducted the proportionate part thereof, to wit, $7, from the first semi-monthly salary payment made to appellant in 1940, appellant's salary being paid in twenty semi-monthly installments. This action in assumpsit was instituted to recover that sum, and the pleadings raised the question of the constitutionality of the Act of June 20, 1939, P. L. 479, 24 PS §571 et seq. Appellant here, as in the court below, contends that this act is unconstitutional on the grounds that it (1) impaired the obligation of her contract, thus offending the Constitutions of both the Commonwealth (article 1, §17, PS Const. art. 1, §17) and the United States (article 1, §10, cl. 1); (2) deprived her of her property without due process of law, against the injunction of both article 1, §9, of the Constitution of the Commonwealth, PS Const. art. 1, §9, and of the fourteenth amendment of the Constitution of the United States; (3) offended article 9,

---

all laws, general, special or local, or any parts thereof, that are or may be inconsistent therewith,' as amended, by empowering school boards in districts of the first class to make, for any year, such general reductions in salaries 'fixed by law as will enable the district to keep its estimated annual expenditures within the estimate of funds available to the district for that year; and by, in such instances, so regulating the discretionary power vested in the Superintendent of Public Instruction to withhold requisitions for moneys payable by the Commonwealth to school districts which have not made provision for full payment of minimum salaries and increments that the exercise of such power shall not interfere with the operation of this act during the limited period in which it is to be in effect; and granting certain options to the members of the school employes' retirement system during said period."

§1, of the Constitution of the Commonwealth, PS Const. art. 9, §1, requiring uniformity of taxation; (4) was a delegation of power to levy taxes forbidden by article 3, §20, of the Constitution of the Commonwealth, PS Const. art. 3, §20; (5) by its title gave no notice of its effect upon article 12, §1210, of the School Code of May 18, 1911, P. L. 309, as amended, 24 PS §1164 et seq., fixing minimum salaries of teachers in public schools, and so violated article 3, §3, of the Constitution of the Commonwealth, PS Const. art. 3, §3; (6) was discriminatory and unreasonable.

We shall consider the reasons assigned by appellant to establish the unconstitutionality of the Act of June 20, 1939, P. L. 479, 24 PS §571 et seq., in the above order.

We recognize that the constitutional prohibition against impairment of contracts applies to the state or its subdivisions as obligor (*McBride v. Allegheny County Retirement Board et al.,* 330 Pa. 402, 407, 199 A. 130), and that "A school district is an agency of the Commonwealth and as such a quasi-corporation for the sole purpose of administering the system of public education: *Wilson v. Philadelphia School District,* 328 Pa. 225, 231 [195 A. 90]": *Smith v. Philadelphia School District et al.,* 334 Pa. 197, at page 202, 5 A. 2d 535, at page 538. We also must observe that appellant had a written contract of employment with defendant. This was required under the Teachers' Tenure Act of 1937. *Teachers' Tenure Act Cases,* supra. We think it is also undeniable that, save for the legislation here in question, appellant, by the terms of her contract, would be entitled to an annual salary for the year 1940 of $2,800. But it does not necessarily follow that by that legislation, which authorized the salary reduction which defendant made by the resolution of its board of education on December 12, 1939, the obligation of her contract was unconstitutionally impaired. An examination of the precise nature of the obligation of appellant's

contract with defendant supports the opposite conclusion.

Our courts have frequently had occasion to define the obligation of a contract as protected against subsequent legislation by the provisions of both the Federal and State Constitutions. In *Beaver County Building & Loan Ass'n v. Winowich et ux.*, 323 Pa. 483, at page 489, 187 A. 481, at page 484, our Supreme Court used the following language: "In determining what constitutes the obligation of a contract, no principle is more firmly established than that the laws which were in force at the time and place of the making of the contract enter into its obligation with the same effect as if expressly incorporated in its terms: *McCracken v. Hayward*, 2 How. 608, 613; *Von Hoffman v. City of Quincy*, 4 Wall. 535, 550; *Walker v. Whitehead*, 16 Wall. 314, 317; *Edward v. Kearzey*, 96 U. S. 595, 607; *Barnitz v. Beverly*, 163 U. S. 118, 127; *Hooker v. Burr*, 194 U. S. 415, 420; *W. B. Worthen Co. v. Kavanaugh*, 295 U. S. 56, 60."

It is pertinent to point out this conception of the obligation of contracts, because the contract between appellant and defendant was not left in an entirely implied relation to the laws in force at the time and place of making, "as if expressly incorporated in its terms"; at least one of those laws, the School Code of 1911, was by express reference incorporated as follows: "This contract is subject to the provisions of the act approved the eighteenth day of May one thousand nine hundred and eleven (Pamphlet Laws three hundred nine) entitled 'An Act to establish a public school system in the Commonwealth of Pennsylvania together with the provisions by which it shall be administered and prescribing penalties for the violation thereof providing revenue to establish and maintain the same and the method of collecting such revenue and repealing all laws general special or local or any parts thereof that are or may be inconsistent therewith' and the amendments thereto."

The meaning of such an incorporation was considered in the *Teachers' Tenure Act Cases,* supra, which interpreted the same form of teacher's contract as here involved. In those cases the boards of several school districts challenged the constitutionality of the Teachers' Tenure Act of 1937 on the ground that it impaired the obligation of their previous contracts with their professional employees by restricting the grounds of termination of those contracts. Our Supreme Court held that the obligation of the contract by reference to the School Code of 1911 "and the amendments thereto" was rendered not an absolute but a qualified obligation. In an opinion by Mr. Chief Justice KEPHART, the Supreme Court said (329 Pa. 213, at page 228, 197 A. 344, at page 353) : "But the contract which the school teachers have with the State is a qualified contract. It is subject to delimitation of its operation by subsequent statutory changes . . . . . . The legislature, in providing by the Act of 1929 the form of contract to be executed by the teacher, expressly recognized its qualified nature by including the proviso that it was to be subject to the provisions of the Act of 1911 'and the amendments thereto.' And the same provision is in the Act of 1937. The language of these clauses is broad enough to include future amendments as well as those existing at the time the contracts were entered into, and it indicates the intention of the parties to submit their relationship to legislative change. The Act of 1937 itself is such an amendment."

The subjection of the obligation of this form of contract to legislation subsequent to its execution was also pointed out in *Bragg v. Swarthmore School District et al.,* 337 Pa. 363, 11 A. 2d 152. It was there said, in an opinion by Mr. Justice DREW (at page 366) : "Such a change in the relationship was actually accomplished by the Act of June 20, 1939, P. L. 482, which took effect prior to the date set for appellant's suspension, and at a time when her contract was in full force.

Consequently, the Act of 1939 was automatically incorporated into the contract then existing between her and the School District, and it is to its provisions that we must turn, in deciding the present controversy: See *Teachers' Tenure Act Cases,* supra, 237-239; *Colyer v. Granville Township School District,* 331 Pa. 435 [200 A. 40]; *Willoughby v. Bacon,* 331 Pa. 437 [200 A. 71]; *Shaffer v. Johnson,* 335 Pa. 31 [5 A. 2d 157]."

On behalf of appellant it is argued that by the words "and the amendments thereto," in the form of contract as first prescribed by section 1205 of the School Code of 1911, as amended by section 1 of the Act of May 7, 1929, P. L. 1576, No. 480, 24 PS §1126, were meant only amendments previous to the date of the contract. This contention would seem to be conclusively disposed of by the *Teachers' Tenure Act Cases,* supra. It was there indicated that the qualification of the obligation of a teacher's contract by subsequent legislation did not even depend on express reference to the school law and changes therein. The court said (329 Pa. 213, at page 226, 197 A. 344, at page 353) : "Even if no mention were made in these contracts of the reserved power in the legislature to alter the school laws, it would be deemed to exist by essential implication." Appellant's argument, carried to its ultimate conclusion, seems to be that by her contract she has a continuing right, fixed and unchangeable, short of constitutional amendment, to the annual salary therein provided. In *Smith v. Philadelphia School District et al.,* supra, 334 Pa. 197, at page 204, 5 A. 2d 535, at page 539, it was said: "The Tenure Act is but an amendment to the School Code, and should be construed in conjunction with the other provisions of the Code to effectuate its purpose as a whole. By the provisions of the Code, a school district must operate on a strictly limited budget and changes can be made only in the manner provided by the legislature (School Code, Section 532, as amended). Furthermore, if the School District were required to

maintain forever its salary schedule, it must in some manner be accorded the right to secure the necessary funds. But its ability to levy taxes is strictly limited by statute (School Code, Section 524, as amended), and by the provisions of our Constitution: *Wilson v. Phila. School Dist.*, supra [328 Pa. 225, 195 A. 90]." See Act of May 25, 1939, P. L. 182, §1, 24 PS §562.

In *Ehret v. Kulpmont Borough School District*, 333 Pa. 518, at page 524, 5 A. 2d 188, at page 191, referring to the purpose of the Teachers' Tenure Act of 1937, in an opinion by Mr. Chief Justice KEPHART, the Supreme Court said: "...... nor was it the intention of the legislature to disrupt a school district's financial scheme, which must be operated upon a budget limited by the Code, that cannot be exceeded except in the manner provided by the legislature."

In *Smith v. Philadelphia School District et al.*, supra, it was held that without violating the provisions of the Teachers' Tenure Act of 1937, the school district might make a general reduction of salaries of its employees to the statutory minimum set by the amendments of July 10, 1919, P. L. 910, April 28, 1921, P. L. 328, and March 12, 1929, P. L. 18, to section 1210 of the School Code of 1911, 24 PS §1164 et seq., although immediately previous to the Teachers' Tenure Act of 1937 it had been operating under a schedule of salaries in excess of that minimum. In the present case the question is whether the same authority which fixed that minimum cannot later reduce it without impairing the obligation of a contract embodying that minimum. In other words, has the statutory minimum been rendered irreducible by the circumstance of its having been embodied in appellant's contract? For the proposition that it has, reference is made by appellant to *State of Indiana ex rel. Anderson v. Brand*, 303 U. S. 95, 58 S. Ct. 443, 82 L. Ed. 685. The opinion of the United States Supreme Court in that case sets forth that in 1927 the State of Indiana enacted a Teachers' Tenure Law pro-

viding that any person who had served as a teacher under contract for five years and then contracted for further service should thereupon have his contract continue in force for an indefinite period subject to cancellation only in the manner and for the causes specified in the statute. By an Act of 1933, the 1927 legislation was repealed as to teachers in township schools, and the respondent school corporation in reliance on the repeal had given the petitioner notice of termination of her contract. The petitioner applied for a writ of mandamus to compel her being continued in employment, which was denied, and this judgment was sustained by the Supreme Court of Indiana. The United States Supreme Court, however, found the Act of 1933 unconstitutional as impairing the obligation of appellant's contract, and ordered the writ to issue.

It is true, as counsel for defendant here observes, that the Indiana Teachers' Tenure Law does not appear to have included any reference to the effect of amendments upon the contracts ordained by the statute, which may be a sufficient distinction of fact to remove the present controversy from the force of that holding. But it must further be noted that the Act of 1933 was there struck down not merely because it interfered with the fulfillment of a contract previously in being, but because, limited as it was to townships, it did so for no discoverable public purpose. The opinion of the court, written by Mr. Justice ROBERTS, said in part (303 U. S. 95, at page 108, 82 L. Ed. 685, at page 695):

"It is significant that the Act of 1933 left the system of permanent teachers and indefinite contracts untouched as respects school corporations in cities and towns of the state. It is not contended, nor can it be thought, that the legislature of 1933 determined that it was against public policy for school districts in cities and towns to terminate the employment of teachers of five or more years' experience for political or personal

reasons and to permit cancellation, for the same rea-
sons, in townships.

"Our decisions recognize that every contract is made
subject to the implied condition that its fulfillment may
be frustrated by a proper exercise of the police power
but we have repeatedly said that, in order to have this
effect, the exercise of the power must be for an end
which is in fact public and the means adopted must be
reasonably adapted to that end, and the Supreme Court
of Indiana has taken the same view in respect of legis-
lation impairing the obligation of the contract of a
state instrumentality.

"The causes of cancellation provided in the Act of
1927 and the retention of the system of indefinite con-
tracts in all municipalities except townships by the Act
of 1933 are persuasive that the repeal of the earlier
act by the later was not an exercise of the police power
for the attainment of ends to which its exercise may
properly be directed."

The necessary converse of that reasoning seems to be
that for a justifiable public purpose applying to all
school districts the repeal of the tenure provided by the
Act of 1927 might have been effectively accomplished.

Such a justifiable public purpose is apparent on the
face and in the very terms of the Act of 1939 here in
question. Granted, as appellant urges, that the purpose
of the Teachers' Tenure Act of 1937 was, in part at
least, to provide for the security of teachers in their em-
ployment, or, in the language of our Supreme Court, in
*Teachers' Tenure Act Cases*, supra, 329 Pa. 213, at page
222, 197 A. 344, at page 351, "to preserve the system
of employment in the educational field free from any
interference," and to take away "the heretofore discre-
tionary power of school boards to oust employees with-
out cause," it would be a poor guarantee which secured
a teacher in a contract against an insolvent school dis-
trict, unable to keep its schools open. In one sense the
Act of 1939 here attacked can be said to increase rather

than diminish the security which appellant and her fellows in interest jealously guard, and quite properly. As said in *Retirement Board of Allegheny County v. McGovern et al.*, 316 Pa. 161, at page 176, 174 A. 400, at page 407, relative to changes in the laws affecting the stability and soundness of the county employees' retirement fund: "The legislature may from time to time, within the confines of that established relation, alter, change, amend, and render intact the actuarial soundness of the system so as to strengthen its fibers in any way it sees fit. Changes in details, such as length of service required, contributions needed, and age requirements, to keep the fund on sound actuarial practices, are essential."

The contention is advanced on behalf of appellant that the decision of our Supreme Court in *Teachers' Tenure Act Cases,* supra, turned upon the necessity there felt of declaring that the legislature in passing the Teachers' Tenure Act of 1937 did not and could not surrender the power of future legislatures to fulfill the legislative function of providing for public school education created by article 10, §1, of our Constitution, PS Const. art. 10, §1, whereas, it is said, the decision of the Supreme Court of the United States in the Brand case pointed out the error of declaring any such general reservation of legislative power over the subject of teachers' tenure. It is also asserted that, were not these decisions of the United States Supreme Court and of our own Supreme Court rendered on the very same day, the reasoning of the former would quite probably have changed the reasoning, if not the conclusion, adopted in *Teachers' Tenure Act Cases,* supra.

It is unquestionable that the attack made upon the Teachers' Tenure Act of 1937 was in part on the ground "that it abridges the right of future legislatures to enact appropriate laws in the exercise of the governmental function as prescribed by Article X, section 1": *Teachers' Tenure Act Cases,* supra, 329 Pa. 213, at page

223, 197 A. 344, at page 352. This was answered by the declaration that nothing one legislature might do in its conception of its constitutional function to provide public education could prevent or hinder a successor body from undoing. Our Supreme Court said (329 Pa. 213, at page 224, 197 A. 344, at page 352) : "So implanted is this section of the Constitution in the life of the people as to make it impossible for a legislature to set up an educational policy which future legislatures cannot change. The very essence of this section is to enable successive legislatures to adopt a changing program to keep abreast of educational advances. The people have directed that the cause of public education cannot be fettered, but must evolute or retrograde with succeeding generations as the times prescribe. Therefore all matters, whether they be contracts bearing upon education, or legislative determinations of school policy or the scope of educational activity, everything directly related to the maintenance of a 'thorough and efficient system of public schools,' must at all times be subject to future legislative control. One legislature cannot bind the hands of a subsequent one; otherwise we will not have a thorough and efficient system of public schools ...... This determination flows from the fact that if the Constitution is to be operative at all times, we cannot restrict it so that it becomes stagnant, and expose it to future ruin by so doing. For these reasons, appellants' objection that the Teachers' Tenure Act abridges the power of future legislatures falls, because a subsequent legislature may abolish this Act, in toto, if it deems it necessary to do so under Article X, section 1." It is also true that the Supreme Court of the United States met the argument made in the Brand case, supra, that "every contract is subject to the police power and that in repealing the Teachers' Tenure Act the legislature validly exercised that reserved power of the State," with a comment upon the grounds of cancellation of a teacher's contract provided by the Indiana

statute, and the observation: "Thus in the declaration of the state's policy, ample reservations in aid of the efficient administration of the school system were made." But we do not think it possible to conclude that the Supreme Court of the United States in pointing out the express reservation of power to terminate the contracts in question denied the existence of an unexpressed power in the Indiana legislature to wipe out the entire system of teachers' tenure if it thought it proper and necessary to do so. On the contrary, the court recognized such an unexpressed reservation, for it said (303 U. S. 95, at page 109) : "The causes of cancellation provided in the Act of 1927 and the retention of the system of indefinite contracts in all municipalities except townships by the Act of 1933 are persuasive that the repeal of the earlier act by the later was not an exercise of the police power for the attainment of ends to which its exercise may properly be directed." This unexpressed power, it may be said, could not be considered to have been exercised in a partial repeal of the Teachers' Tenure Law for any reason bearing upon efficient administration of the school employment system when ample power to act for such reasons had been embodied in the statutory procedure, and it could not be said to have been invoked for any other valid public purpose when confined in its application to a single class, instead of all classes, of school districts. In our judgment, the decision is entirely consonant with that of our own Supreme Court in *Teachers' Tenure Act Cases,* supra.

Thus far appellant's argument in support of her contractual theory naturally involves article 1, §10, of the Federal Constitution; article 1, §17, of the Constitution of Pennsylvania; the amendatory Act of April 28, 1921, P. L. 328, as amended, 24 PS §1165; and the Teachers' Tenure Act of 1937. We find no inconsistencies or contradiction in these provisions unless one or more of them is taken at more than its maximum

value. Under the Acts of 1921 and 1937, reciprocal rights and duties set forth in written contracts have been undertaken by school districts and individuals throughout the Commonwealth, which are to be performed in the indefinite and uncertain future. But neither the contract clause of the Constitution of the United States (art. 1, §10, cl. 1) nor that of the Constitution of this Commonwealth (art. 1, §17) has rendered those undertakings immune to change at the hands of a legislature endowed with its constitutional mandate to maintain an efficient system of public schools. If that were the effect of the contract clause of either Constitution upon the legal relation directed by the Teachers' Tenure Act of 1937, we are of the opinion that it would not be the challenged Act of 1939 which would contravene the contract clause, but the Teachers' Tenure Act of 1937 which would have contravened the public education clause of our Constitution, and hence have been fatally defective. But it was held otherwise in *Teachers' Tenure Act Cases,* supra.

*Phelps v. Board of Education of West New York et al.,* 300 U. S. 319, 57 S. Ct. 483, 81 L. Ed. 674, cited by defendant, does not appear to be in point. There a salary reduction enactment "notwithstanding any such person to be under tenure" was sustained on the ground that teachers had a "legislative status as governmental employees, though they possessed some incidental contractual rights," in the language of the footnote to *Teachers' Tenure Act Cases,* supra, 329 Pa. 213, at page 226, 197 A. 344, at page 353. Pennsylvania teachers were there expressly declared not to be in such a relationship, and the Phelps case thereby is rendered irrelevant. On this ground also the Phelps case is distinguished from the Brand case by the United States Supreme Court.

Appellant also contends that the Act of 1939 amounts to a deprivation of property without due process of law in violation of both the fourteenth amendment of

the Constitution of the United States, and of article 1, section 9, of the Constitution of the Commonwealth, PS Const. art. 1, §9. It is argued that this result flows from the sentences of the Act of June 20, 1939, P. L. 479, 24 PS §571, which forbid reductions in salaries except when "all other economies in the expenses of conducting the school system in the district, as the board may deem proper, have been provided for," and which order distribution of a surplus of revenue accumulated by the authorized decreases in salaries with the proviso that "The decision of the board, as to the existence or non-existence of a surplus in any given year, shall be final." It is to be noted that section 532 of the School Code of 1911, as amended by section 1 of the Act of June 20, 1939, P. L. 479, 24 PS §571, was at the same session of the legislature also amended by section 1 of the Act of June 24, 1939, P. L. 774, 24 PS §571, which provides in part: "The board of school directors shall, at least fifteen days prior to the time final action is taken on any budget, publish, by advertisement at least once in two newspapers of general circulation printed in the municipality in which such school district is located, notice that such proposed budget has been prepared and is open to public inspection at the office of the board of school directors; and such advertisement shall include a notice of public hearing on the proposed budget, scheduled for at least ten days before final action is taken upon any budget." These provisions would seem to afford a full hearing of any objections to the structure of the budget, as well to the employee whose salary, among others, is being reduced as to any other resident of the district. It is not apparent why such an employee should have any more right to a hearing on the adoption of a budget reducing his salary than a taxpayer upon the rate of tax the budget will require him to pay in order that that same salary shall be met. The provision for a

public hearing on the budget gives the employee every right of the **taxpayer.**

In *Susman v. Board of Public Education of City of Pittsburgh,* 228 F. 217, the District Court of the United States for the Western District of Pennsylvania held that the right given a property owner by the law as to assessment of property valuation to appeal from the assessment, and to defend against a scire facias issued on a tax lien, extended to school taxes and supplied a sufficient guarantee of due process to satisfy the requirements of the Constitution of the United States, and from this decision the United States Supreme Court refused to hear an appeal (245 U. S. 636, 38 S. Ct. 190, 62 L. Ed. 524). The present provisions of the amended section 532 of the School Code appear to insure far more protection than was there held sufficient for a taxpayer's interest. If appellant enjoys the equivalent of this, her rights are as well protected as they can practically be. However, beyond this, both as to preparation of the budget and as to distribution of a surplus of funds accumulated by salary economies, there is the additional safeguard referred to in *Susman v. Board of Public Education of City of Pittsburgh,* supra, as ever present against the illegal assessment of a tax, a bill in equity to enjoin it; and in both *Ehret v. Kulpmont Borough School District,* supra, and in *Langan v. Pittston School District et al.,* 335 Pa. 395, 6 A. 2d 772, it was indicated that the arbitrary exercise or outright abuse of the discretion vested in a school board is not beyond the corrective power of the courts.

The constitutionality of the Act of June 20, 1939, P. L. 479, 24 PS §571, is next attacked by appellant on the ground that the reduction of salary it empowers the school district to make is a tax which violates article 9, §1, of the Constitution of the Commonwealth, PS Const. art. 9, §1, requiring taxation to be uniform upon the same class of subjects. The definitions which our Supreme Court has given the word "tax" do not lend their

support to this contention. In *Young Men's Christian Association of Germantown v. Philadelphia,* 323 Pa. 401, at page 413, 187 A. 204, at page 210, it was said: "Taxes are not penalties but are contributions which all inhabitants are expected to make (and may be compelled to make) for the support of the manifold activities of government." In *Woodward v. Philadelphia et al.,* 333 Pa. 80, at page 86, 3 A. 2d 167, at page 170, the court said: "Taxation is proportional contribution by persons or property." The loss resulting to appellant by this statute does not come within the language of these definitions. The coincidence that an employer is a municipal corporation or an agency of the legislature empowered to levy taxes does not mean that every reduction in salary it imposes upon its employees is a tax and required to meet the constitutional test of uniformity. This would seriously complicate the employment of personnel by every taxing power in the Commonwealth. In addition the contention appears to beg the question whether the legislation attacked is invalid. If it is valid the amount deducted from appellant's salary never became hers, and it is an assumption of the point at issue to argue that it did, which would be necessary in order for it to be taken from her by taxation.

The same reasoning is an answer to the appellant's next contention that the authority conferred upon the school district by the Act of 1939 is offensive to article 3, §20, of the Constitution of the Commonwealth, PS Const. art. 3, §20, forbidding legislative delegation of the taxing power to any special commission, private corporation, or association, within the first of which categories the non-elective school board of defendant district was, in *Wilson v. Philadelphia School District et al.,* supra, held to fall. If the loss which appellant was by this legislation required to suffer did not constitute a tax, the authority to inflict it was not a delegation of the taxing power. A further answer is to be

found in the limitation imposed upon the deductions authorized by the act, i. e., one to five per cent of salaries in the class affected. In *Minsinger v. Rau*, 236 Pa. 327, 84 A. 902, it was held that the School Code of 1911 in authorizing the levy by first-class school districts of a tax of not less than five or more than six mills on the total assessed value of all property was not an unconstitutional delegation of taxing power. The abandonment of this statutory maximum in later amendments of the School Code (Act of April 28, 1921, P. L. 328, and March 12, 1929, P. L. 20, 24 PS §562) was what moved the Supreme Court in *Wilson v. Philadelphia School District et al.*, supra, to declare unconstitutional the absolute fixing by the appointive boards of first-class districts of the school tax rate. Restoration of this control by the setting of a maximum rate in the Act of December 1, 1938, Sp. Sess., P. L. 103, 24 PS §562, although no minimum is declared, has been held in *Moore v. Pittsburgh School District et al.*, 338 Pa. 466, 13 A. 2d 29, constitutionally to validate the assessment and collection of school taxes in first-class districts. Similarly, in the present case, the setting of a limit upon the range of the board's discretion in reduction of salaries appears to obviate the charge of improper delegation, even if, on any view, the reduction be considered a tax.

Another objection which appellant raises to the Act of 1939 is that it is in direct conflict with section 1210 of the School Code of 1911, as amended, 24 PS §1164 et seq., which establishes schedules of minimum salaries. This is true. As a matter of construction, the act is open to no other interpretation; its effect was to alter the amount of compensation to which, under section 1210, appellant otherwise would be entitled. This alone is no objection to it; the same effect resulted from the Act of April 25, 1933, P. L. 69, 24 PS §1187 et seq., which authorized a temporary suspension of that sched-

ule, and which we upheld in *Bishop v. Bacon et al.*, 130 Pa. Superior Ct. 240, 196 'A. 918. Appellant's argument then subjects the present legislation to the constitutional test of singleness of subject and sufficiency of title.

Neither title nor body of the Act of 1939 mentions section 1210 of the Code or the minimum salary schedules thereby established. It is argued that, therefore, the act embraces two subjects of which its title gives no notice. In *Leinbach's Estate*, 241 Pa. 32, 88 A. 67, the Act of May 9, 1889, P. L. 168, entitled "An Act Relating to the adoption of any person as an heir," was upheld against the contention that implicitly it amended the Act of 1833, relating to descent and distribution of estates, without notice in its title or express reference in its body. This is sufficient authority to justify the validity of the present legislation under article 3, §3, of the Constitution of the Commonwealth, PS Const. art. 3, §3. Conceding that section 532 is the budget section of the School Code, the subjects of school budget and teachers' salaries are no more widely. separated than those of heirship and devolution of estates. In fact they are so bound up by their nature that no reasonable person could escape the notice contained in the words of the title, "by empowering school boards in districts of the first class to make, for any year, such general reductions in salaries fixed by law as will enable," etc. See *Commonwealth v. Stofchek,* 322 Pa. 513, 185 A. 840.

Finally, the act here involved is charged with being arbitrary, discriminatory, and unreasonable. That recipients of salaries in excess of $2,500 per year, teachers of long service, should suffer reductions under this amendment of the School Code, while those receiving less than that figure, juniors in years of service, suffer none, seems no more unreasonable than that the Code should provide a maximum salary not to be exceeded in

any length of service but attained in comparatively few years by younger employees. Again, authorities are cited from the field of taxation as to the impropriety of classification by difference in quantity of property (*American Stores Co. v. Boardman, Secretary of Revenue,* 336 Pa. 36, 6 A. 2d 826), or of arbitrary classification (*Clearfield Bituminous Coal Corp. v. Thomas et al.,* 336 Pa. 572, 9 A. 2d 727). We repeat that the reduction of salaries here in question is not a tax, and that the classification of employees of defendant school district was not for purposes of taxation. As to the hypothetical objection that the act permits a junior high school teacher previously entitled to $2,550 per year to be reduced to $2,422.50, while a fellow teacher of one year's less service continues to be entitled to $2,425, with apparent discrimination, it may be said that "Classification is not necessarily invalid because borderline cases may present situations which, if they stood alone, might constitute argument against the adopted classification": *National Transit Co. et al. v. Boardman, Secretary of Revenue,* 328 Pa. 450, at page 457, 197 A. 239, at page 242.

We are all of the opinion that the Act of June 20, 1939, P. L. 479, 24 PS §571 et seq., cannot be held to be unconstitutional for any of the reasons advanced by appellant, and that the burden which rested on her to show that it was in violation of our Federal or State Constitution has not been met.

Assignments of error are overruled.

Judgment is affirmed.