Opinion by
 

 Hirt, J.,
 

 On April 20, 1937 the Pennsylvania Public Utility Commission on its own
 
 motion began an
 
 investigation of Tony Infantino and his father, doing business as Infantino Transfer Company, to determine whether they were engaged in the business of transportation of goods in violation of the Public Service Company Law. On May 19, 1937, two days before the hearing on that inquiry, appellant filed an application for a certificate of public convenience and necessity as a common carrier to transport liquor or wine from six named distilleries or factories all
 
 located
 
 within the State, to the various warehouses of the Pennsylvania
 
 *247
 
 Liquor Control Board in Pittsburgh, Philadelphia, Johnstown, Scranton, Erie and New Castle. Hearings on this petition wrere not closed until November 5, 1937. In the meantime the Public Utility Act of May 28, 1937, P. L. 1053 superseded the former act and became effective on June 1, 1937; after that date the proceeding was continued under the Public Utility Law. On September 29, 1937, while the application for a certificate as a common carrier was pending, appellant filed a petition under the “grandfather” clause of the new act, §804 (a), 66 PS §1304, for a permit authorizing him, to transport liquor by motor vehicle as a contract carrier for two distillers or manufacturers named in the application. By a later amendment the number was increased to five. These, he maintained, he had been serving as a bona fide contract carrier prior to and upon the effective date of the act. After hearing, the commission on July 29, 1940 made an order in each of the three proceedings, to the following effect: it terminated the investigation instituted on its own motion; it refused to issue a certificate of public convenience to appellant as a common carrier and dismissed his application for a permit as a contract carrier. In addition, appellant was ordered to cease and desist from transportation for hire within the Commonwealth. This appeal followed, limited in its scope to the refusal of the commission to issue a permit to transport liquor as a contract carrier under §804 of the act.
 

 The power to regulate the operations of private carriers, was first granted by the Public Utility Law. Before that act their activities were no concern of the Commonwealth. The “grandfather” clause was intended to protect the right of an existing contract carrier to continue the business in which he was engaged on June 1, 1937. In asserting the right to a permit under the clause, the burden is on the applicant to establish all facts necessary to invoke its benefits.
 
 *248
 

 Spackman v. Pa. P. U. C.,
 
 141 Pa. Superior Ct. 164, 14 A. 2d 839. The scope and purpose of the clause has been defined in
 
 Puhl et al. v. Pa. P. U. C.,
 
 139 Pa. Superior Ct. 152, 11 A. 2d 508, as follows: “It was the intent and purpose of the proviso in section 804 to recognize and continue in force service bona fide performed by contract motor carriers on the effective date of the act as a matter of right, without the necessity of establishing that the applicant was fit and able properly to perform such service or showing that the proposed service was in the public interest. The condition that such contract carriers should be bona fide contract carriers meant that they must be genuine contract carriers without deceit or fraud.”
 

 Appellant in seeking a certificate both as a common carrier and as a contract carrier asserted rights which are inconsistent. One may be either a common or a contract carrier but he cannot be both as to the same shipments. “As the definition of a contract carrier by motor vehicle excludes from that class common carriers, it follows that if applicants were acting as common carriers without a permit from the commission they would not now be entitled to a permit under the ‘Grandfather’ clause:
 
 P. U. C. v. Gornish,
 
 134 Pa. Superior Ct. 565, 571, 4 A. 2d 569”:
 
 Puhl et al. v. Pa. P. U. C.,
 
 supra.
 

 From the record, by agreement, consisting in a consolidation of all of the testimony in the three proceedings, it appears: During the year 1986 and in prior years, Charles Infantino, appellant’s father, was in the trucking business and had transported liquor between points in Pennsylvania for Kasco Distilling Company of Philadelphia, Tom Walker, Inc., of Pittsburgh, and other producers of wines and liquors. Throughout the period, appellant managed the business for his father. On September 29, 1936 the Public Service Commission found that the father was doing business as a common carrier without a certificate, in violation of the law,
 
 *249
 
 and ordered him to discontinue operation; following the order, the registration of two trucks in the name of Charles Infantino was suspended. No appeal was taken from that order. On January 1, 1937, Tony Infantino bought his father’s trucking business, ¡together with the equipment and the trucks were then registered in his name. However, both continued to hold transportation permits from the ,Liquor Control Board and during the first three months of 1937 some deliveries were made by appellant on the permit issued to the father. During ,that period liquors were transported for ten distilleries or producers to warehouses of the Liquor Control Board and in two instances, delivery of liquor was made to ,consignees in the State of New Jersey. There is testimony that appellant admitted “hauling for about a dozen liquor concerns and further transported other property for different trucking companies out of Pittsburgh.” There was other evidence of at least one occasion when he hauled merchandise other than liquor ¡from Philadelphia to Pittsburgh. In his application for a certificate of public convenience appellant averred positively that “for a period of more than a year [prior to jMarch 29, 1937] he operated as a public carrier for hire.” From the testimony, the commission found that “appellant has held himself out to the public to transport for any member of the public within the limit of his facilities” and concluded that his status was that of a common carrier and not a contract carrier.
 

 In April 1937 appellant discontinued the service of transporting liquor for three of the five shippers named in his application for a contract carrier permit but resumed hauling for all of them in April 1938. In the interval he says that his business was restricted to transporting for two companies only; Tom Walker, Inc., and Kasco Distilling Company. These he served without interruption.
 

 The status of appellant is governed by what he had
 
 *250
 
 been doing and not by what he asked permission to do in the future.
 
 Puhl et al. v. P. U. C.,
 
 supra. It is a reasonable inference from the testimony that immediately before June 1, 1937 he on occasion served others than the above two shippers. But whether he did pr not is not controlling for the alleged oral contracts which he had with the Basco and Walker companies as well as with all of the five shippers named in his application indicate no more than agreements to carry freight upon request, for the same consideration as charged by the railroads. These shippers were not obliged to use appellant’s facilities but could and did ship by railroad and by other means and were free to discontinue the service at any time. They regarded appellant’s responsibility to them as that of a common carrier. The oral agreement in every instance was the same land of arrangement which a common carrier would enter into with a ^shipper. These oral agreements are evidence that he was a common rather than a contract carrier. “Contracts, express or implied, are an incident to almost every form of transportation for a compensation.” Therefore, “the fact that a contract, oral or written, is required before the actual transportation of the goods, is not .controlling in determining whether a carrier is a common carrier or a contract carrier”:
 
 Pa. P. U. C. v. Gornish,
 
 134 Pa. Superior Ct. 565, 4 A. 2d 569. Written agreements with the shippers were entered into by appellant on August 1, 1938 but they have no bearing on his status on June 1, 1937, Which determines his rights under the “grandfather” clause.
 

 There is competent evidence sufficient to support the finding (of the commission that appellant was not a contract carrier and the order based upon that finding is final. By Art. XI, §1107, on appeal, we may reverse only for error of law or lack ,of evidence to support the finding.
 
 Bickley v. Pa. P. U. C.,
 
 135 Pa. Superior Ct. 490, 5 A. 2d 806;
 
 Spackman v. Pa. P. U. C.,
 
 supra.
 

 
 *251
 
 We may observe, though the question is not raised, that the commission, after finding appellant to be a common parrier, properly refused a certificate of public convenience. The burden upon him of proving that the service was necessary or proper for the accommodation or safety of the public was not met. Transportation by rail twas available to all shippers. In some instances delivery by railroad was slower than by truck, but liquor is not perishable and speedy delivery is not essential, though desirable from the shipper’s viewpoint. The due date of each invoice was dependent upon the date of actual delivery and delay in delivery resulted in a corresponding delay in payment. The cost of transportation by rail or by truck was the same except that, in less than carload lots, the shipper, by using appellant’s service, saved the cost of loading. The advantages of transportation by truck over railroad service contributed to the shipper’s convenience and lessened his cost of delivery to some inconsiderable extent but did not establish that the service was either necessary or proper in the public interest.
 

 Order affirmed.