## Wiley, Appellant, *v.* Pennsylvania Public Utility Commission.

310

Argued March 21, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, and WATKINS, JJ. (ERVIN, J., absent).

*Robert B. Greer,* with him *Butler, Beatty, Greer & Johnson,* for appellant.

*Paul Ribner,* Assistant Counsel, with him *Howard L. Criden,* Assistant Counsel, and *Thomas M. Kerrigan,* Acting Counsel, for Pennsylvania Public Utility Commission, appellee.

*James H. Booser,* with him *McNees, Wallace & Nurick,* for Motor Freight Express, intervening appellee.

*Paul F. Barnes,* with him *Shertz, Barnes & Shertz,* for intervening appellees.

*William J. Taylor,* with him *William P. Quinn,* for intervening appellees.

OPINION BY RHODES, P. J., June 11, 1958:

This appeal is from an order of the Pennsylvania Public Utility Commission denying an applicant a permit to render service as a contract carrier by motor vehicle to one particular shipper where it appeared that, although the applicant was willing and able to perform the service, the existing service of certificated common carriers was sufficient and satisfactory.

Fred E. Wiley, trading and doing business as Wiley's Chester Auto Express, filed an application with the commission on May 4, 1956, under section 804 of the Pennsylvania Public Utility Law, as amended, 66 PS §1304, for a permit to transport as a contract carrier petroleum products, by-products, accessories, equipment and supplies for the Tidewater Oil Company between points in the counties of Philadelphia and Delaware and from points in said counties to other points in Pennsylvania and vice versa. Forty-four protests were filed. A hearing was held on July 13, 1956, at which time Wiley amended his application to exclude the transportation of commodities in tank vehicles and to exclude the transportation of commodities from points of origin in Delaware County. A second hearing was held after which briefs were filed; on May 6, 1957, the commission issued an order refusing the application. Wiley then appealed to this Court.

Since the order of the commission did not contain findings of fact in sufficient detail to enable us to determine the questions in controversy, the record, on July 17, 1957, was remitted to the commission on its petition. On September 3, 1957, the commission issued a long form order setting forth its determination of the facts and the reasons for the denial of the application.

It is pertinent to note that contract carriers as distinguished from common carriers were not regulated and did not require a prerequisite approval or permit before rendering service until the Public Utility Law, Act of May 28, 1937, P. L. 1053, so provided in section 804, 66 PS §1304. The Public Service Company Law of 1913 contained no provision for the regulation or certification of contract carriers. *Pennsylvania Public Utility Commission v. Gornish,* 134 Pa. Superior Ct. 565, 569, 4 A. 2d 569; *Infantino v. Pennsylvania Public Utility Commission,* 146 Pa. Superior Ct. 245, 247, 22 A. 2d 108. Experience in the administration of the Public Service Company Law demonstrated that the public interest required the regulation of contract carriers in order to coordinate the service and regulation of common carriers by motor vehicle and "to develop and preserve a safe highway transportation system properly adapted to the needs of the commerce of the Commonwealth of Pennsylvania and insure its availability between all points of production and markets of this Commonwealth." Section 801 of the Law, 66 PS §1301; *Pennsylvania Public Utility Commission v. Gornish,* supra, 134 Pa. Superior Ct. 565, 569, 4 A. 2d 569, 571. The Legislature determined as a matter of fact that the service of common carriers by motor vehicle and the service of contract carriers by motor vehicle "are so closely interwoven and interdependent, and so directly affect each other, that in

order effectively to regulate such common carriers by motor vehicle and forwarders, and to provide a proper and safe highway transportation system in the public interest, it is necessary to regulate the service of such contract carriers by motor vehicle and brokers, . . ." Section 801 of the Law, 66 PS §1301.

In order to effectively carry out the announced policy the Legislature set forth in article VIII of the Public Uility Law of 1937 detailed provisions conferring power upon the commission to regulate contract carriers. Section 804 (a) of the Law, as amended, 66 PS §1304 (a), provides: "No person or corporation shall render service as a contract carrier by motor vehicle unless there is in force with respect to such carrier a permit issued by the commission, authorizing such person or corporation to engage in such business: . . ." At the time of the present application Wiley held a permit as a contract carrier under the "Grandfather Clause" of section 804 (a) to transport certain products of the Gulf Oil Corporation, the Gulf Tire and Supply Company, and Paper Products Manufacturing Company from points located in the counties of Philadelphia and Delaware to points in Pennsylvania and vice versa, excluding the transportation of products in bulk in tank vehicles. By the present application Wiley proposed to render the same type of service for the Tidewater Oil Company in Philadelphia that he was then rendering for the Gulf Oil Corporation. In 1948 he had been denied a similar application to render the same type of service for the Sinclair Refining Company.

R. H. Hadler, the assistant chief rate clerk for the eastern division of the Tidewater Oil Company, appeared before the commission in support of Wiley's application. He stated that he had investigated the service rendered by Wiley and found that Wiley's serv-

ice was satisfactory in every respect; that Tidewater Oil Company maintained packing and warehousing facilities in Philadelphia and makes intrastate shipments of petroleum products in packages therefrom to various destinations; that Tidewater Oil Company desired the services of Wiley since such services were available to competitors, particularly the Gulf Oil Corporation in the same area; that it was interested in securing service of single-line traffic rather than joint-haul traffic which is sometimes subject to delay and sometimes results in difficulty on damage claims; that if the application of Wiley were granted Tidewater Oil Company would continue to use the service of the available common carriers in single-line traffic.

From the testimony of this witness it appears that the facilities of Tidewater Oil Company in Philadelphia from which the transportation was to be rendered had been in existence for three or four months prior to the hearing on July 13, 1956; that during this period Tidewater had used the services of several common carriers having single-line haul authority; and that this service had been sufficient, effective, and satisfactory. The witness further testified that all other considerations being equal his company was naturally interested in selecting a carrier with the lowest rates and that Wiley's rates are generally lower than the rates of the available common carriers. He stated that he had no difficulty with joint hauling but that he desired to avoid this type of transportation.

We observe that Tidewater also has railroad facilities available at its plant in Philadelphia; and that there are available common carriers which have authority to haul to all points within the state.

The commission concluded that the service proposed by Wiley was not superior in character to the service rendered by other motor carriers; that the service

which he proposed to render was available, adequate, and satisfactory from common carriers;[1] and that the principal reason Tidewater desired Wiley's service was to obtain favorable rates. Although the commission found that Wiley was able to satisfactorily perform the services desired by Tidewater, it concluded that the proposed service was not consistent with the public interest and the policy declared in section 801 of the Law, 66 PS §1301.

Our scope of review in these matters is the same as in cases involving the necessity for service of a common carrier, that is, the order of the commission may not be disturbed in whole or in part except for error of law, lack of evidence to support the finding, determination or order of the commission, or violation of constitutional rights. *Merchants Parcel Delivery, Inc. v. Pennsylvania Public Utility Commission,* 150 Pa. Superior Ct. 120, 132, 28 A. 2d 340.

Wiley contends that, where, as here, a shipper has expressed a desire for the services of an admittedly competent contract carrier to promote efficiency and economy in its operation and to obtain a service available to a competitor, the granting of an application to furnish such service as a contract carrier is consistent with the public interest, the policy of the Public Utility Law, and the constitutional rights of the parties. The contention in effect is that the commission may not deny a permit where a shipper desires the services of a contract carrier, available to a competitor, regardless of the sufficiency of the existing common carrier service which is admittedly satisfactory.

---

[1] The commission found that in addition to rail facilities the Tidewater Oil Company had available the service of forty-two common carriers by motor vehicle and that such transportation facilities and service were adequate.

Unquestionably the standard by which the commission must act in determining whether a contract carrier applicant should be granted a permit is greater under the Law than the mere determination of the desire of a particular shipper to have the service. Section 804 (b) of the Law, 66 PS §1304 (b), provides in part: "Every application for such permit shall be made to the commission in writing, be verified by oath or affirmation, and shall be in such form and contain such information as the commission may require by its regulations. A permit shall be issued by the commission to any qualified applicant therefor authorizing in whole or in part the service covered by the application, if it appears from the application, or from any hearing held thereon, that the applicant is fit, willing, and able properly to perform the service of a contract carrier by motor vehicle, and to conform to the provisions of this article and the lawful orders or regulations of the commission thereunder, and that the proposed service to the extent authorized by the permit will be consistent with the public interest and the policy declared in section eight hundred one of this act; otherwise such application shall be denied." The burden, as a rule, is on the applicant to establish the facts necessary to entitle him to a permit. See *Infantino v. Pennsylvania Public Utility Commission*, supra, 146 Pa. Superior Ct. 245, 247, 22 A. 2d 108. The commission found that Wiley established his ability and fitness to render the service. However, the shipper witness, representing Tidewater, showed nothing more than a desire to have the service of Wiley notwithstanding the fact that adequate and satisfactory common carrier service was available.

The public policy declared in section 801, 66 PS §1301, with which the issuance of the permit as a contract carrier must be consistent, is in aid of the public

interest to promote safe, adequate, economical and efficient service by *common carriers* by motor vehicle and just and reasonable rates therefor, without unjust discrimination and unfair or destructive practices. *Philadelphia Association of Wholesale Opticians v. Pennsylvania Public Utility Commission,* 152 Pa. Superior Ct. 89, 99, 30 A. 2d 712. As we have pointed out, the commission concluded that to grant this application would be inconsistent with the public interest, and that the policy declared by the Legislature in section 801 of the Law, 66 PS §1301, would best be served by denial of the application, as the present transportation service and facilities were adequate. We have previously decided the validity of these objectives.

In view of the fact that the purpose of regulating contract carriers and requiring them to obtain a permit before beginning to render service is to promote and foster sound economic conditions and safe, adequate, economical, and efficient service to the public by *common carriers* by motor vehicle, it is fundamental that the commission consider the existing common carrier service available to the shipper who desires the services of a contract carrier and that it determine whether the interjection of the contract carrier in competition with the satisfactory and adequate common carrier service would be detrimental to the public interest and to the inherent advantages of common carriage by motor vehicle. If the commission did not consider the effect the granting of the permit to the contract carrier would have upon the common carriers certificated to operate and serve in the same area and the same shipper, it would not fulfill its duty to promote the policy declared by the Legislature. Where the commission finds that the existing common carrier service by motor vehicle is safe, adequate, eco-

nomical, and efficient, it may determine that the addition of a contract carrier in competition would not in fact promote or improve such existing service by common carrier. In this instance the commission has found that it would not.

As the commission indicated, Tidewater was interested principally in the lower rate which Wiley proposed for his service. While the public and particular shippers are of course entitled to a reasonable rate consistent with the promotion of the public interest as a whole, it does not follow that the lowest rate is always the most advisable in the public interest. A low rate may not actually promote safe, efficient, and economical service but may lead to destructive competitive practices which would ultimately prove detrimental to the public interest. In referring to the regulation of contract carriers, our Supreme Court said: "It was felt, and properly so, that such price-cutting or the charging of an unreasonably *low minimum* rate would likely result in the deterioration of equipment and the increase of hazards to the public." *Betterman v. American Stores Company,* 367 Pa. 193, 199, 80 A. 2d 66, 71. It is true that the commission, if it granted a permit to Wiley, could control his minimum rate schedule in order to bring it to the level of the existing common carrier rates. Section 810 of the Law, 66 PS §1310. If that were done, the primary desire of Tidewater to have Wiley perform its service at a lower rate would be defeated, and the principal, if not the sole, advantage to Tidewater in having Wiley's service would be eliminated. The result would be merely another carrier permitted to compete with the existing rail and forty-two common carriers by motor vehicle for Tidewater's business. Eliminating the advantage of a more favorable rate, no substantial reason is apparent for granting the permit in the public interest.

This is not a case where the applicant proposes to provide a specialized service which is not otherwise available. Cf. *Merchants Parcel Delivery, Inc. v. Pennsylvania Public Utility Commission,* supra, 150 Pa. Superior Ct. 120, 127, 28 A. 2d 340. Although it might be convenient for Tidewater to have a carrier on call, this desire alone is not, on this record, sufficient to render the proposed service specialized or to benefit the public interest in common carriers furnishing public service for which the regulation of contract carriers is permissible. The record indicates that 75 per cent of the shipments from Tidewater's plant are interstate and that common carriers are used for such transportation. It was not improper for the commission to conclude that whatever advantage might accrue to Tidewater by having the service of one contract carrier for the bulk of the 25 per cent of the shipments intrastate would not outweigh the public interest in promoting the existing common carrier service. We have often had occasion to say that the extent of competition in intrastate transportation, which actually is the essence of this case, is largely committed to the sound judgment and discretion of the commission. *Pittsburgh & Lake Erie Railroad Co. v. Pennsylvania Public Utility Commission,* 170 Pa. Superior Ct. 411, 421, 85 A. 2d 646.

The denial of this application does not, as Wiley suggests, infringe upon his constitutional rights. Any agreement between Wiley and Tidewater came into existence long after the Public Utility Law of 1937 provided for the certification of contract carriers. Such agreement would not be within the purview of the constitutional protection. See *Walsh v. Philadelphia School District,* 144 Pa. Superior Ct. 321, 327, 19 A. 2d 598, affirmed 343 Pa. 178, 22 A. 2d 909, certiorari denied 315 U. S. 823, 62 S. Ct. 916, 86 L. Ed. 1219.

See, also, *Taylor v. Haverford Township,* 299 Pa. 402, 409, 149 A. 639.

The distinction between a common carrier and contract carrier is often difficult to state from a practical standpoint. In *Merchants Parcel Delivery, Inc. v. Pennsylvania Public Utility Commission,* supra, 150 Pa. Superior Ct. 120, 129, 28 A. 2d 340, 344, we held: ". . . the test is whether or not such person holds himself out expressly or impliedly, as engaged in the business of supplying his product or service to the public, as a class, or to any limited portion of it, as contradistinguished from holding himself out as serving or ready to serve only particular individuals." This test while generally of assistance is not always satisfactory. For example, a class D common carrier by motor vehicle is often certified to haul the product or goods of one particular shipper. See *Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission,* 185 Pa. Superior Ct. 115, 118, 119, 138 A. 2d 279. The applicant for a class D common carrier certificate is obliged nevertheless to prove not only his ability to render the proposed service but the need therefor and the inadequacy of the existing service. The extent of the burden upon such applicant and the sufficiency of the evidence to support a grant of such limited authority are of course directly related to the nature and extent of the authority sought and in such instances may be less than if more extensive rights were involved. See *Pennsylvania Railroad Company v. Pennsylvania Public Utility Commission,* supra, 185 Pa. Superior Ct. 115, 123, 138 A. 2d 279. If, as Wiley seems to contend, an applicant for a permit to haul goods for one shipper need only show that the shipper desires his service as a convenience, and perhaps as more economical than existing service, it would be useless for any applicant to apply for a class D certificate.

The commission, charged with protecting the interest of the public, necessarily looks to the substance and ultimate effect, not the form, of the application. Certainly Wiley was not obliged to apply for a class D certificate as a common carrier, but the fact that he applied for a permit as a contract carrier to haul for Tidewater does not alleviate his burden of showing that the issuance of the permit would be in the public interest as that policy has been declared in section 801 of the Law, 66 PS §1301.

The order of the commission is affirmed at the cost of appellant.