## Coastal Tank Lines, Inc. et al., Appellants, v. Pennsylvania Public Utility Commission.

Argued December 9, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Paul F. Barnes,* with him *Shertz, Barnes & Shertz,* for protestants, appellants.

*Louis J. Carter,* Assistant Counsel, with him *Thomas M. Kerrigan,* Counsel, for Pennsylvania Public Utility Commission, appellee.

*James W. Hagar,* with him *McNees, Wallace & Nurick,* for applicant, intervening appellee.

OPINION BY HIRT, J., March 18, 1959:

Our Public Utility Commission, in the order before us, issued a permit to Pamco Inc., authorizing it: "To transport, as a contract carrier, fats, entrails, bones, animal protein, meat and bone scrap, tankage, bone meal, residue of packing-house offal (semi-processed), dried blood, greases, tallows and processed articles and materials made from the above-described commodities;

and equipment, products and materials used in process-ing and packaging the above commodities for Inland Products, Inc., from its plant in the City of Pittsburgh, Allegheny County, to points in Pennsylvania, and vice versa." The application was made to the Commission by Pamco, pursuant to an agreement entered into with Inland Products, Inc., by which it undertook when authorized by the Commission, to transport by motor vehicle *all* raw materials from collection points in Pennsylvania to Inland's processing plant on Herr's Island in Pittsburgh; and to transport the finished products of the plant from Pittsburgh to consignees wherever located in Pennsylvania. Protests were filed by a number of certificated common carriers, three of which appealed from the order.

Inland Products, Inc., serves butcher shops, hotels, packing houses and supermarkets by picking up animal protein wastes described, as above quoted, in the order. These so-called "green" or raw materials are delivered to terminals at Johnstown, Uniontown and New Brighton in Pennsylvania which serve as collection points. Under its contract Pamco will provide specially built dump trailers with steel partitions, to separate various classes of raw materials, as well as open van trailers for hauling drums of raw fats and the like, and will deliver the raw materials from the collection points, at the terminals, to Inland's plant in Pittsburgh. Open top, and tank trailers will also be supplied for the delivery of finished animal feed or other products, and tallow, from Inland's processing plant, to dealers throughout Pennsylvania.

The financial ability and the fitness of Pamco to perform the service have not been questioned. Hauling packing house waste products as a contract carrier, has been its business for fifteen years. In that service elsewhere, it has I.C.C. authority as well as certification

by the Public Service Commission of Ohio. It owns equipment designed for this type of transportation in bulk and it will allocate three of its tractors and five trailers to the service. Pamco will not serve the general public or any class, but will supply a restricted and specialized service to meet the needs of Inland Products, Inc., alone. Local trucks operated by Inland will continue to pick up the raw materials from its sources and haul it to established terminals. There the animal wastes will be dumped from the pickup trucks into Pamco over-the-road trailers or into open barrels for transportation in its van type trailers.

The raw materials, by their very nature, are fertile fields for rampant bacterial growth, and because of the characteristic of fast decomposition, these animal wastes must be transported with all possible dispatch to Inland's rendering plant. Any delay in delivery to the plant, for processing, invites decomposition with the resulting formation of high acids in the protein, which destroys its value for Inland's products. For this reason Pamco will have a trailer waiting at each of the terminals at all times, to be picked up by one of its tractors, when loaded. No storage facilities for raw materials will be available at any of the pick-up terminals; so also Inland will have no means of storing its finished products at its plant. For these reasons carrier service is Inland's most insistant demand. Tallow, one of Inland's important products can be properly transported only in tank trailers equipped with steam coils, to keep the tallow in liquid form. As to this product, Pamco has agreed to have a tank trailer, so equipped, at the plant at all times to receive the tallow as it is run off the cookers; and to transport it to consignees with dispatch on Inland's orders.

The scope of our review "in these matters is the same as in cases involving the necessity for service of

a common carrier, that is, the order of the Commission may not be disturbed in whole or in part except for error of law, lack of evidence to support the finding, determination or order of the commission, or violation of constitutional rights": *Wiley v. Pa. P. U. C.*, 186 Pa. Superior Ct. 309, 316, 142 A. 2d 763. Section 1107 of the Public Utility Law of May 28, 1937, P. L. 1053, as amended, 66 PS §1437. The present order [cf. §804, 66 PS §1304 (b)] is based on a finding of the Commission that the contract carrier service authorized by the permit is in the interest of the public and in accord with the declared policy of §801 of the Law, 66 PS §1301. Our review, questioning the validity of the order in the present appeals, is to be determined in the light of the above principles.

The Commission in disposing of an application for a contract carrier permit, must consider existing common carrier service available to the shipper and, if that service is found to be "satisfactory and adequate", whether "the interjection of the contract carrier in competition with the satisfactory and adequate common carrier service would be detrimental to the public interest and to the inherent advantages of common carriage by motor vehicle": *Wiley v. Pa. P. U. C.*, p. 318, supra. The uncontradicted evidence before the Commission in this case was that the need of Inland Products, Inc., was for complete integrated and flexible service for the transportation of the raw materials to its plant and for the delivery of its finished products to consignees throughout Pennsylvania. Inland's plant is operated 24 hours seven days a week, and the carrier service required, must be geared to the continuous operation of the plant. These facts reflected in the findings of the Commission, are important: The over-the-road dump trucks, because of the offensive character of the waste products hauled, cannot be used for

the transportation of any other kind of material. The odor and the contaminating effect of the materials make it necessary for the carrier to dedicate vehicles to this service alone. There was no common carrier in Pennsylvania available for this branch of the service, most essential to Inland.

The appellant certified common carriers are able to transport tallow in tank trailers, owned by them, which are properly equipped with steam coils. And they seek to reverse the order of the Commission by their offers to supply transportation of but one of Inland's products, to-wit: tallow, on the ground that adequate common carrier service is available, although as to one phase of Inland's needs. This is not enough. Inland requires a complete specialized service which cannot be rendered by existing common carriers. Appellants are unwilling to undertake the transporting of the raw materials from the collection terminals to the processing plant and no other common carrier service is available for this, the least desirable branch of the transportation service which Inland must have.

Since Pamco proposed to provide an integrated specialized service which is not otherwise available we may not set aside the order, since it in other respects, as well, is consistent with the public interest and in accordance with the policy declared in Section 801 of the Public Utility Law, supra. *Merchants Par. Del., Inc. v. Pa. P. U. C.*, 150 Pa. Superior Ct. 120, 28 A. 2d 340. Moreover, the Commission properly held that the injection of the contract carrier service in competition with existing common carriers, as to one narrow phase of the shipper's requirements, did not affect the result. The Commission has the power to authorize competition where it is necessary to provide adequate service. *Noerr Motor Freight Inc. v. Pa. P. U. C.*, 181 Pa. Superior Ct. 322, 124 A. 2d 393.

Order affirmed at appellants' costs.