Brink's, Incorporated, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. Pagerly Detective and Security Agency, Inc., Intervenor.

Purolator Security, Inc. and Purolator Courier Corp., Petitioners *v.* Pennsylvania Public Utility Commission, Respondent. Pagerly Detective and Security Agency, Inc., Intervenor.

Argued October 9, 1980, before Judges MENCER, BLATT and CRAIG, sitting as a panel of three.

*Herbert R. Nurick, McNees, Wallace & Nurick,* for petitioner, Brink's Incorporated.

*James W. Patterson, Harper, George, Buchanan & Driver,* for petitioner, Purolator Security, Inc. and Purolator Courier Corp.

*Robert A. Christianson,* Assistant Counsel, with him *Joseph J. Malatesta, Jr.,* Deputy Chief Counsel, and *Alfred N. Lowenstein,* Deputy Chief Counsel, for respondent.

*Raymond A. Thistle, Jr.,* for intervenor.

Opinion by Judge Mencer, January 29, 1981:

Brink's, Incorporated (Brink's), Purolator Security, Inc. (Purolator Security), and Purolator Courier Corp. (Purolator Courier) have appealed an order of the Public Utility Commission (PUC) which granted to Pagerly Detective and Security Agency, Inc. (Pagerly) the right to provide contract carrier service to certain customers in the Counties of Schuylkill, Lebanon,

Lancaster, Berks, Chester, and Montgomery and from those customers to Federal Reserve member banks in Philadelphia. We affirm.

Prior to the PUC order in question, Pagerly was authorized to render armored car and courier service as a contract carrier for the American Bank and Trust Company of Pennsylvania (American Bank) between its various branches in the seven counties listed above and certain banks in Philadelphia. Pagerly wished to expand its service to include various customers of the American Bank throughout the area, and so it filed an application for certification as a Class D common carrier. After a hearing, the Administrative Law Judge entered an initial decision granting the application. This decision was modified by the PUC to grant contract carrier authority to Pagerly

> [t]o transport by motor vehicle, as a contract carrier, currency, coin, bullion, negotiable instruments, bonds, securities, checks, drafts, books of account, valuable papers and documents and non-negotiable papers for its customers between points in and among the counties of Schuylkill, Lebanon, Lancaster, Lehigh, Berks, Chester and Montgomery and from such points to any corresponding member bank of the Federal Reserve Bank of Philadelphia, in the City and County of Philadelphia, and vice versa;

subject to the following condition:

> that the service described above shall be limited to banks, bank branches, corresponding banks and bank customers in connection with banking transactions of any and all kinds.

Order, Pennsylvania Public Utility Commission, entered October 3, 1979 at Docket A.99238, F.1, Am-A.

Throughout these proceedings, the application of Pagerly for expanded authority was vigorously opposed

by Brink's, Purolator Security, and Purolator Courier.[1] All three now challenge the final order of the PUC on the basis that there is not substantial evidence of need for the service to support the grant of broader authority to Pagerly.

The authority of the PUC to regulate contract carriers arises from Chapter 25 of the Public Utility Code (Code), 66 Pa. C. S. §§2501-2509. Guidelines for issuing or denying a contract carrier permit are spelled out in Section 2503(b) of the Code, 66 Pa. C. S. §2503(b). Section 2503(b) states, in pertinent part:

> A permit shall be issued by the commission to any qualified applicant therefor authorizing in whole or in part the service covered by the application, if it appears ... that the applicant is fit, willing and able properly to perform the service of a contract carrier by motor vehicle, and to conform to the provisions of this chapter and the lawful orders or regulations of the commission thereunder, and that the proposed service to the extent authorized by the permit will be consistent with the public interest and the policy declared in section 2501 ...; otherwise such application shall be denied.

Section 2501(a) of the Code, 66 Pa. C. S. §2501(a) identifies the policy and intent of the General Assembly in enacting Chapter 25:

> [T]o regulate ... the service of common carriers ... in such manner as to recognize and preserve the inherent advantages of ... such carriers.... It is hereby found as a fact ... that the service of common carriers by motor vehicle, for-

---

[1] Brink's and Purolator Security are contract carriers authorized to transport coins, currency, securities, and other valuables throughout Pennsylvania. Purolator Courier is a common carrier authorized to carry other commodities throughout the Commonwealth.

warders, contract carriers by motor vehicle, and brokers ... are so closely interwoven and interdependent, and so directly affect each other, that in order effectively to regulate such common carriers by motor vehicle and forwarders, and to provide a proper and safe highway transportation system in the public interest, it is necessary to regulate the service of such contract carriers....

Clearly, the General Assembly intended to provide for the regulation of contract carriers only to the extent that such regulation is necessary to protect common carriers from harmful competition by contract carriers. It did not intend to protect contract carriers from competition among themselves, except to the extent necessary to insure that one is not given an unfair advantage over another.[2]

This legislative intent has long been recognized by the courts of Pennsylvania.

The Commission in disposing of an application for a *contract* carrier permit, must consider existing *common* carrier service available to the shipper and, if that service is found to be 'satisfactory and adequate', whether 'the interjection of the contract carrier in competition with the satisfactory and adequate common carrier service would be detrimental to the public interest ...': Wiley v. [Pennsylvania

---

[2] In this opinion, we use the terms "unfair competition" and "harmful competition" to mean different things. "Harmful competition" refers to competition with a common carrier where there is insufficient need for additional service to warrant a grant of authority to another common carrier or a contract carrier. "Unfair competition" refers to competition between two carriers where one of those carriers is forced, by the terms of its grant of authority, to operate under more burdensome conditions than the other.

Public Utility Commission, 186 Pa. Superior Ct. 309, 318, 142 A.2d 763, 767 (1958)].

*Coastal Tank Lines, Inc. v. Pennsylvania Public Utility Commission*, 189 Pa. Superior Ct. 53, 57, 149 A.2d 581, 583 (1959) (emphasis added).

Section 2502(a)(1) of the Code, 66 Pa. C. S. §2502(a)(1), gives the PUC authority to impose regulations on "[c]ontract carriers by motor vehicle, and to that end the commission may prescribe minimum rates which are just and reasonable, and establish requirements with respect to uniform systems of accounts, records, reports, preservation of records, safety of service and equipment and insurance."

The sole purpose in view in thus giving the commission limited authority to regulate the *service* of contract carriers by motor vehicle, is ... in aid of the public interest to promote safe, adequate, economical and efficient service by *common carriers* by motor vehicle and just and reasonable rates therefor, without unjust discrimination and unfair or destructive practices ... [and] to prevent carriers by motor vehicle, which were in reality doing common carrier service, from masquerading as contract carriers....

*Philadelphia Association of Wholesale Opticians v. Public Utility Commission*, 152 Pa. Superior Ct. 89, 99, 30 A.2d 712, 717 (1943) (emphasis in original).

As a result, the only situations in which one contract carrier may be permitted to object to a grant of authority to another contract carrier are those in which that grant of authority provides an unfair competitive edge, such as in regulation of rates.

The purpose of prescribing minimum rates for contract carriers by the Pennsylvania Public Utility Commission was to protect common carriers from cut-throat competition and price-

cutting on the part of the contract carriers, as well as to protect the contract carriers from cut-throat competition and price-cutting among themselves.

*Betterman v. American Stores Co.*, 367 Pa. 193, 199, 80 A.2d 66, 71 (1951).

In short, Chapter 25 of the Code authorizes limited regulation of contract carriers for the purpose of protecting common carriers from *harmful* competition by contract carriers. Chapter 25 of the Code also authorizes regulation of contract carrier rates, record keeping, and safety provision to prevent any one contract carrier from *unfairly* competing with common carriers or other contract carriers. When the PUC considers an application for contract carrier authority, it may consider only whether the applicant is fit, willing, and able to perform the service and whether any common carrier will be harmed by the grant of authority. Once these two questions are resolved in favor of the applicant, the PUC cannot refuse to grant contract carrier authority, subject to whatever rate, record keeping, and safety provisions may be necessary to avoid unfair competition.

In the present case, the PUC found, based on substantial evidence, that Pagerly is fit, willing and able to perform the services of a contract carrier throughout the seven-county area and to certain banks in Philadelphia. The PUC also found that Pagerly would not compete with common carriers since no other common carriers engage in this type of business in the area in question. Purolator Courier, the only common carrier which opposed the application of Pagerly, decided not to present any witnesses once it became clear that Pagerly was only seeking authority for *armored* operations, because Purolator Courier does not provide armored service.

Once these findings were made, the PUC was required by Chapter 25 of the Public Utility Code to

grant contract carrier authority to Pagerly. Other contract carriers could only object if the PUC imposed rate, record keeping, or safety regulations which provided Pagerly with an unfair competitive advantage. Such contentions have not been raised by Brink's or Purolator Security, and so their appeal must fail.[3] Similarly, Purolator Courier has no basis for its appeal since there is no threat of competition from Pagerly.

Therefore, we will enter the following

## ORDER

AND NOW, this 29th day of January, 1981, the order of the Public Utility Commission, entered October 3, 1979, expanding contract carrier authority to Pagerly Detective and Security Agency, Inc., is hereby affirmed.

---

[3] The appellants contend that the findings of need for additional service were insufficient to warrant the grant of contract carrier authority. The PUC made such findings in this case, but they were unnecessary. Findings of fact concerning the need for additional service would be necessary to support a grant of contract carrier authority where it is shown that the application will result in competition with a common carrier. Clearly, competition without need for additional service would be harmful to the common carrier. Where there is no competition with a common carrier, however, such findings are irrelevant. Therefore, the contention that the findings were insufficient is meritless.