Brink's Incorporated, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. Miley Security Transport, Inc. et al., Intervenors.

Purolator Armored, Inc., Petitioner *v.* Pennsylvania Public Utility Commission, Respondent. Miley Detective Agency, Inc. et al., Intervenors.

Argued June 8, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, WILLIAMS, JR., CRAIG, MACPHAIL and DOYLE.

*Herbert R. Nurick, McNees, Wallace and Nurick,* for petitioner, Brink's Incorporated.

*Larry R. McDowell, Harper & Driver,* for petitioner, Purolator Armored, Inc.

*Eric R. Rohrbaugh,* Assistant Counsel, with him *Alfred N. Lowenstein,* Deputy Chief Counsel, and *Joseph J. Malatesta, Jr.,* Chief Counsel, for respondent.

*Peter Platten,* for intervenors.

OPINION BY JUDGE CRAIG, August 9, 1982:

In these appeals by Brinks Incorporated and Purolator Armored, Inc. from a grant by the Public Utility Commission (PUC) of temporary contract carrier authority to Miley Detective Agency, Inc. for the operation of armored car service as to which the applicant is also seeking permanent authority, the PUC and the applicant have filed motions to quash on grounds that (1) an order granting temporary contract carrier authority is interlocutory, and (2) the protestants lack standing.

Miley previously filed, and is still pursuing, its application for armored car service authority within the same nine Pennsylvania counties in which the protestants also have operating authority. After Miley later filed a further application, at the same docket, for temporary authority with respect to two specific customers, the PUC granted to protestants limited standing by an order of June 29, 1981, which this court held to be interlocutory.[1] Thereafter, the PUC, by its order of December 10, 1981, here sought to be appealed, adopted an action of the administrative law judge and granted Miley temporary contract carrier authority for nine counties, coterminous with the scope of the permanent authority request, as well as the two-customer temporary authority.

### TEMPORARY CONTRACT CARRIER AUTHORITY AS INTERLOCUTORY OR FINAL

In both cases here, the PUC bases its motion to quash on the claim that the grant of temporary contract carrier authority is interlocutory. We must reject that position because the temporary authority grant, with respect to its entire scope over its period of effectiveness, will not be subject to any review in any commission or court proceeding other than this one, and is therefore final.

In *Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978), our Supreme Court adopted the test of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541 (1949), which treats an order as final and appealable if

---

[1] *Brink's Incorporated v. Public Utility Commission* (No. 1833 C.D. 1981, filed November 12, 1981) and *Purolator Armored, Inc. v. Public Utility Commission* (No. 1866 C.D. 1981, filed November 12, 1981; *pet. for app.*, No. 652 E.D. Misc. 1981, Pa. Supreme Ct., denied June 30, 1982).

(1) it is separable from and collateral to the main cause of action;

(2) the right involved is too important to be denied review; and

(3) the question presented is such that if review is postponed until final judgment of the case, the claimed right will be irreparably lost.

Considering the first and third elements of the test, we perceive that a temporary grant of contract carrier authority is clearly separable from, and collateral to, the permanent authority proceeding, and, because of that disassociation, all opportunity for any review of the temporary grant will be lost if postponed, in that the temporary authority will encounter no reconsideration in the resolution of the permanent authority request. A temporary grant of this sort does not merge into the permanent authority proceeding or order; it simply ends when permanent authority is granted or refused. The PUC brief acknowledges as much by correctly stating that the temporary authority grant has no effect upon the permanent authority application, thus underscoring the separability of the two. We agree; the Public Utility Code[2] is devoid of any provision under which a temporary contract carrier authority grant pursuant to 66 Pa. C. S. §2509 can be retrospectively reviewed or affected, by the allowance of refunds or otherwise.

*Widoff v. Public Utility Commission*, 42 Pa. Commonwealth Ct. 216, 400 A.2d 676 (1979), in which we held that a grant of a temporary *rate* approval to a utility was interlocutory, is distinguishable because, as we there noted, at the conclusion of a case, if the temporary rates prove to be excessive, the commission can and would order a refund with respect to the temporary rates, covering the same period during which

---

[2] 66 Pa. C.S. §§101-3315.

the temporary rates have been in effect; thus, the temporary utility rate issue is fully merged into the final rate proceeding, and the integrated issue is wholly subject to final review.

With respect to the second element of the test, the PUC argues that denial of an appeal opportunity would not involve denial of review to any important right of the protestants, on the theory that our decision in *Brink's Incorporated v. Public Utility Commission,* 56 Pa. Commonwealth Ct. 371, 424 A.2d 1010 (1981), limits the standing of a competing contract carrier solely to raising issues of unfair (*i.e.,* discriminatory or non-uniform) competition. The PUC's theory is self-defeating because, even if the standing of the protestants is limited, the PUC itself, by its order of June 29, 1981 has formally acknowledged that the protestants do have standing to some degree, and that acknowledgment is as applicable to the temporary authority as it is to the permanent authority issue.

For the reasons stated above, our conclusion is that a grant of temporary contract carrier authority must be regarded as final and appealable because, by it, the protestants are put "out of court" without further opportunity for review of such grant unless given that opportunity at this juncture. *T.C.R. Realty, Inc. v. Cox,* 472 Pa. 331, 372 A.2d 721 (1977).

### Standing of Protestants

As the alternative ground submitted in support of these motions, we must consider the allegations that the protestants lack standing, put forth as an independent basis for quashing these appeals.

All parties have cited our earlier reported decision, in *Brink's, Inc. v. Pennsylvania Public Utility Commission,* 56 Pa. Commonwealth Ct. 371, 424 A.2d 1010 (1981), which, having involved Pagerly Detective and Security Agency, Inc. as applicant, can be distinctively identified as the *Pagerly* case.

That *Pagerly* decision recognized that contract carrier operating authority cases involve at least three major categories of issues: first, the question of the fitness of the applicant ("fit, willing and able properly to perform"), 66 Pa. C.S. §2503(b); second, the question of need for the contract carrier service, in relation to the potentiality of harmful competition with respect to common carriers, 66 Pa. C.S. §2501(a); and, third, the question of possible unfair competition by the contract carrier against other carriers, including other contract carriers, 66 Pa. C.S. §2502(a)(1). In the *Pagerly* case, where the protestants sought primarily to press the second question, need for service, we held that the law did not entitle them to do so, but that they could pursue the third question, unfair competition. We said:

> [T]he only situations in which one contract carrier may be permitted to object to a grant of authority to another contract carrier are those in which that grant of authority provides an unfair competitive edge, such as in regulation of rates.

*Id.* at 376, 424 A.2d at 1013.

In the present case, in addition to any question of unfair competition—which the protestants have not expressly discarded—they have sought before the PUC primarily to press the fitness issue, and the PUC, in its interlocutory decision according them only limited standing, has forbidden that they do so, confining them to the unfair competition category alone.

Now that we have here concluded that we have a final order to consider, we must confront the same question which was earlier voiced as the question on the merits in the previous interlocutory appeal—

> Do competitor protestants in a contract carrier case have standing to participate in the fitness issue?

That question was not expressly raised in the *Pagerly* case. There the opinion used the word "only," in the passage quoted above, but it also elaborated upon that passage by stating further:

> When the PUC considers an application for contract carrier authority, it may consider only whether the applicant is fit, willing, and able to perform the service and whether any common carrier will be harmed by the grant of authority. Once these two questions are resolved in favor of the applicant, the PUC cannot refuse to grant contract carrier authority, subject to whatever rate, record keeping, and safety provisions may be necessary to avoid unfair competition.
>
> [T]he PUC found, based on substantial evidence, that Pagerly is fit, willing and able to perform the services of a contract carrier throughout the seven-county area and to certain banks in Philadelphia. The PUC also found that Pagerly would not compete with common carriers since no other common carriers engage in this type of business in the area in question....
>
> Once these findings were made, the PUC was required by Chapter 25 of the Public Utility Code to grant contract carrier authority to Pagerly. Other contract carriers could only object if the PUC imposed rate, record keeping, or safety regulations which provided Pagerly with an unfair competitive advantage.

*Id.* at 377-8, 424 A.2d at 1013. To conclude that the *Pagerly* opinion thereby negated contract carrier competitor standing as to fitness would be unwarranted because we were not there asked to focus on that question.

Indeed, in addition to stating that the PUC shall not consider harmful competition in relation to con-

tract carriers, we did state that fitness, along with unfair competition, was to be considered (as well as any harmful competition in relation to common carriers).

Nor were we presented with the question of a competing contract carrier's standing to question fitness as a potential element of unfair competition. To permit an unfit — *e.g.*, unqualified or ill-equipped — contract carrier to compete could well be a realistic factor in potential unfair competition. As we noted, even though harmful competition with contract carriers is never a question in these cases, fitness is always a question, and there is no reason that the PUC, in attending to that public concern, should turn away from information offered by private parties, even self-interested ones. Although we have observed the natural penchant of some contract carriers to try to maintain an area of commercial competition as their own preserve, we believe that we can rely upon the PUC and its administrative law judges to prevent contract carriers from abusing the opportunity hereby afforded them, by limiting excessive employment of inquisitorial or delaying tactics.

Accordingly, we decline also to accept the claim of lack of standing, and therefore will deny all motions to quash.

#### Order

Now, August 9, 1982, motions to quash by respondent and intervenors are denied.